Opinion op the Court. .
Walter Carr filed this bill, with an injunction, against a judgment at law obtained against him by Wil-Jiam Pawling, assignee of John South, on a note for two hundred pounds. The object of his bill is to have the specific performance of a contract with South for the sale of lands, or a conveyance of the legal estate, or to be relieved from the payment of the note in question, which was given as part of the price* Carr, at the date of the purchase, which was on the 10th day of September 1787, paid to South a negro, at the price of one hundred pounds, and executed a note for one hundred more, and the note in contest for two hundred, as the whole consideration for the land.. South, at the feamq time executed to Carr his bond, in a large penal sum, conditioned as follows:
“ Whereas, some time past, William Hoy and, John-South made a purchase of two thousand eight hundred acres of land, of Patrick Callaghan; the said land lying on Licking, adjoining Ruddell’s Station, on the lower-side thereof, which the Hoy took the said Callaghan’s.bond for said lands: Now these are, therefore, to cerfy, that the said John South hath sold the one equal *367 half of said land to Walter Carr, his heirs, executor's or administrators; and the said South obliges himself to make the said Hoy assign over the one equal half said bond, in every respect, to him, for the same; then, when the said assignment is made, the said South is clear of said bond from said Carr, and this obligation to be void 5 otherwise to remain in full force in law.”
At the same time, South assigned to Carr, by a writ* ten assignment without recourse, a bond executed by Patrick Callaghan to John Martin, binding said Patrick to convey to said Martin 200 acres, part of the preemption of said Patrick, adjoining his settlement on Licking, being part of the same, lands referred to in the aforesaid bond from South to Carr. This bond of Patrick Callaghan had been previously assigned to South by Martin. Carr charges that South, at the time of this contract, represented the title as safe, and that it was in said Patrick Callaghan, who was ready to convey it; and that Ploy himself hada letter of attorney from said Patrick, authorising said Hoy to convey the land at once, which letter of attorney he, Carr, saw upon record; that accordingly, shortly after this contract with South, Hoy likewise continued the deception, by representing that South was an equal partner with him iri the, purchase from Patrick Callaghan, and that the title was ready; and that, in consequence of South’s bond, Hoy agreed to assign to him one half of the contract with Callaghán, which was for 2,600 acres, instead of2,800, (the bond of Callaghan to Martin for 200 making the 2,800,) and that in said assignment to him by Hoy, it was agreed that the lands should be divided; in other words, that Hoy should assign to Carr a certain 1,400 acres, and reserve to himself another 1,400. That the whole land was two settlements, with their adjoining pre-emptions, obtained from the commissioners in 1779, one in the name of said Patrick Callaghan, and the other in the name of Daniel Callaghan, and that of said Daniel was represented to be the most valuable ; and accordingly Hoy assigned to him, Carr, the settlement and pre-emption of Daniel, on the back of the bond from Patrick, and reserved Patrick’s for himself; and as Martin’s bond on Patrick was for part of Patrick’s own pre-emption, to make Hoy’s title complete to the whole of that claim, he, Carr, assigned it to Hoy. He represents, that in all this jie was deceived; for, *368 shortly afterwards, he discovered that neither Patrick nor -^an*e^ Callaghan had the legal title to these lands ; that the surveys were made for, and the patents issued in the names of Thomas Johnson and Henry Garrett; and, of course, no conveyance could be had; that he applied to Garrett, and he would not convey; that, on this discovery, he applied to Hoy, and accused him of the deception. It was then discovered that a certain Edward Worthington had laid the claims for the said Hamel and Patrick before the commissioners, and obtained their certificates, and had then agreed with Johnson and Garrett, that they should obtain the preemption warrants and bear the expences of the claims through the different offices, and thus secure the title; and accordingly Hoy produced to him a bond executed by said Johnson to Worthington, dated in 1780, which acknowledged the receipt of the certificates from Worthington, and stipulated to give deeds for the claims to Worthington, so soon as patents were obtained; and so much of this bond Hoy then assigned to Carr, as covered up Daniel Callaghan’s settlement and pre-emption. That he could not still obtain the title; but found, that in 1779, Worthington had agreed with Johnson and Garrett to clear out said claims for the Callaghans, and to give them, for doing so, 700 acres, one moiety of Patrick’s claim, and 500 acres, part of Daniel’s pre-emption, reserving the remaining moiety of Daniel’s pre-emption and the whole of the settlement for Worthington; and this was put into writing, which he alleges is held by Hoy, and which Hoy obtained by procuring an assignment thereof from Worthington, and giving to Worth-ington a bond of indemnity against all suits or claims that might be brought against him by the said Patrick or Daniel Callaghan, on account of meddling or interfering with said claims. Such a writing, as well as the assignment thereof, is accordingly filed in the cause, as well as the bond of indemnity from Hoy to Worth-ington, all dated previous to Carr’s purchase. He further states, that on enquiring of Hoy why he did not state this, as the true state of the title, Hoy alleged that when he had purchased the claims of Patrick Callaghan, Patrick alleged and represented himself to be entitled to both claims, and that he did not intend to abide by the surveys made by Johnson and Garrett, but to execute new surveys; and this he, Hoy* supposed *369 bud been done; which was his apology for not having 'represented the matter truly. But Hoy still insisted that1 this would ma^e no difference, as the contract would still seo.ute the claim of Daniel Callaghan to Carr. He further states, that he then applied to South to rescind; hut he refused; and as it was evident that Carr, if he claimed under the contract between Worth-ton and Johnson and Garrett, could only get 900 acres, reserving to Johnson and Garrett 500 acres for carrying the claims into grant, out of Daniel Callaghan’s pre-emption, South surrendered to him the bond for one hundred pounds, as an indemnity for the said 500 acres, taking, at the same time, from Carr, a bond binding him to pay South the one hundred pounds, or a pro-jmrtion ofit, if more than 900 acres were saved by Carr. Carr insists that he is willing still to complete the contract and pay, if he can get the land, or so far as he can get it; otherwise, he prays to be relieved from the judgment at law, and for relief against the whole contract.
John South answered, and admits his contract wijbt Carr; denies that he ever had any thingto do with the purchase from Patrick Callaghan, by Hoy, or that he knew anything about it; denies being acquainted with the contract, personally, between Worthington, Garrett and Johnson; but admits its existence, and that the claim sold to Carr was derived that way; and admits that he did not teil Carr any thing about the claim of Johnson and Garrett, or that the title was in them. He contends that ail he was bound to do, was to assign over the bond of Patrick Callaghan to John Martin, without recourse, and to procure Hoy to assign over the. contract with Johnson, or that of Callaghan; and insists, that having done so, he is clear, and that the complainant, by taking an assignment from Hoy, of Daniel Callaghan’s settlement and pre-emption, and giving up that of Patrick, instead of an undivided moiety of both, has essentially altered the contract, and therefore can have no relief; especially, as the complainant has assigned over to Hoy the bond from Patrick Callaghan to John Martin. He admits that he refused to rescind, except so far as to give up the bond or note for one hundred pounds, named in the bill, as the difference between nine and fourteen hundred acres; because that the complainant, Carr, had assigned away the aforesaid Rond from Martin, and could not restore it.
*370 The representatives of William Hoy filed no answer.
The suit was brought in the old supreme court for the distx’ict of Kentucky, and on the dissolution of that court, was transmitted to the court of quarter sessions for Fayette county, where the papers were consumed at the conflagration of that office; and in 1803, the complainant below filed a bill exhibiting copies of the old bill and other papers, and also stating that in the mean time Johnson or Garrett, the patentees, or both of them, had conveyed the land to sundry persons, who bad settled thereon, who, he charges, had full notice of his equity; and if they had not, that they were all purchasers pendente Hie, and affected by his suit; and he makes them defendants, and prays a decree against them for the land.
Two of these new made defendants answer, and show that they do not hold any part of Daniel Callaghan’s settlement and pre-emption, claimed by the complainant. A third, George Hamilton, answers, admitting that he .holds part of Daniel Callaghan’s settlement and preemption; and all show, that Thomas Johnson, one of the patentees, had conveyed a part to Benjamin Harrison; that the two devisees of Thomas Johnson, and the said Henry Garrett, had conveyed the whole of said land, including both claims, to Daniel Callaghan, after tile death of Patrick, and that said Daniel Callaghan liad sold to them, and they exhibit the conveyances accordingly. They deny any knowledge of the pendency of this suit, or of the equity of the complainant; insigt they are innocent purchasers for a valuable consideration without notice, and that, as by the complainant’s own showing the papers of the suit were long lost and neglected, -after (lie dissolution of the supreme court, they ought not to lie affected as pendente lile purchasers. The rest of these purchasers, who were made defendants, filed no answer. In the progress' of the cause, the court below empannelled a jury, to enquire whether it was or was not a custom in this country, in the years 1779, 1780-01, &c. for holders of settlements and pre-emptions to give one half for surveying, obtaining preemption warrants and paying all expences to carry such claims into grant. The jury responded to this inquiry, that such custom did exist.
The court, on a final hearing, decreed that the complainant below was entitled to recover 900 acres, td *371 wit, tbe whole settlement and 500 aeres of tbe preemption of Daniel Callaghan, and directed the defendants who were affected by this, recovery, to convey accordingly, and dissolved the injunction obtained against Pawling’s administrator. To reverse this decree this writ of en-or is prosecuted, and the right of the complainant below to a decree for any land, is now serioqs-. ly contested.
To affect a¡ f j’andspra-0 dente Kte, it is necessary ^es ^Tdeíof the legal title was implead-the Vhich is to be set aside.
Whore the ^^dthat are pUV„ chasers fora ^gray®°on“' lice, the onus probandi as to notice, lies on the complainant.
*371 It will be seen, from an inspection of the foregoing; case, that the complainant below has set up an equity from two sources, and derived from different persons. First, that derived from the purchase made by Hoy, of both claims from Patrick Callaghan, and transmitted from Hoy and South to the complainant; and secondly, that derived from the contract between 'Worthing-ton and Johnson and Garrett, the patentees, by which the latter were to have a portion of the land, to wit, 1,200 acres, for carrying the claims into grant, and Worthington the residue. On one of these the court below must have decreed against the purchasers.
1. We would barely observe, that there is no pretext for making these purchasers subject to the effect of the lis pendens; becausethe patentees, Johnson and Garrett, nor neither of the Callaghans, nor Hoy, or either of these purchasers, were made parties to the original hill in the old supreme court, nor were they introduced into the suit sooner than the year 1803, in Fayette; before, which period, the title was all conveyed, in both tracts, to Paniel Callaghan, and from him to the defendants, so far as they have answered; and we appre-bend that to affect a party as purchaser of a title pendente lite, it is necessary to show that tbe holder of the legal title was impleaded before the purchase which is to bo set aside. The controversy,, before the year 1803, was purely between the complainant below, on one side, and South and Pawling’s representatives on tbe other,, neither of whom held the title which was to be affected, by' the controversy,
2. The only claim against them, must he, that they were purchasers with notice of the complainant’s equity 5 and as s6me of them have not answered or denied this allegation, they must rely, pn the insufficiency of the equity of the complainant, tested by. its own strength, on the vouchers filed and brought out in the answers of the other defendants.
If, in such case, the complainant should prove notice of his claim; yet,if it was of a character ivhioh neither a court oflaw nor equity would admit as valid, his proving the notice would avail him nothing. A claim derived from the custom of the country in the early stages of its settlement, to give a particular part of tile land for defraying the office ex-pences, &c. and procuring patents, cannot bo enforced.
*372 It is evident, at first blush, -that as those against whom the decree is rendered, are holders of the claim of Daniel Callaghan alone, they cannot be affected by tbe contract between Hoy and Patrick Callaghan; for it is not shown of proved, or even averred in the bill, that Patrick Callaghan had any right to the claim of Daniel, nor is there any evidence that there was any letter of attorney from Daniel to Patrick, although it is suggested by the bill that South and Hoy thus represented the fact. But as this is not the case with regard to Patrick’s own claim, and as his contract with Hoy includes this likewise, this conclusion may lead to setting aside the division between Hoy and’Carr, and decreeing satisfaction of tbe demand of the complainant below, out of the claim of Patrick. This renders it necessary to enquire into the validity of the contract between Patrick and Hoy, upon the purchasers of Patrick’s claim. This meets with a ready reply; for, admitting this contract could be specifically decreed, Patrick Callaghan’s representatives are not parties, as such; and the only purchasers wbo are made parties, bolding under the claim of Patrick, have answered, denying notice, and plead that they are purchasers for a valuable consideration without notice; and as there is no proof against them, they cannot be affected.
3. If, then, the purchasers against whom tills decree is rendered, are affected, it must be by virtue of the contract between Worthington and Johnson and Garrett, assigned by Worthington to Hoy. Here, at once, an insuperable difficulty is presented. What authority had Worthington over the claims of the Callaghans? The only warrant, we suppose, was intended to be found in the inquiry of the jury, to wit, the custom of the country. But certainly this is no warrant. Be? cause contracts were usual at such certain terms, did it authorise any person, without the consent of the right owner, to take his estate on these terms? Can custom place the lands of every one in market, against his will, and fix terms by which he must abide? Certainly not. It is shown by the writings between Worthington and Hoy, that Worthington had no authority, &nd that he assumed this control of the claims, as the friend of the Callaghans. If they ratified the act, they would have been entitled to the residue, after, the 1,200 acres were deducted, and Johnson and Garrett to that 1,200; if *373 they disavowed the act, they were entitled to the whole, and an equity derived froipj/te?», alone could reach the legal estate. It is true, that* Hoy, by the assignment of Worthington, procured the covenant of the patentees to convey a portion ofthése lands; but -the same writings show that Patrick and Daniel Callaghan were the equitable owners; and an available contract with them, is necessary to reach the title, and it cannot be done by a contract with the patentees, first made by Worthing-ton, and then sold to Hoy without their approbation. And we have already seen, that there is no equity derived from Daniel Callaghan, which would require his claim, or any part thereof, to be decreed to the complainant below.
A custom, that a man without an authority from the owner of lands, and without his consent or. knowledge, and without knowing whether he wishes to sell or not, may dispose of them on the. ordinary terms, and by so doing bind the owner, seems to bo intrinsically illegal.
The only remaining ground set up by the complainant below, is a letter, or letters, addressed to him by Henry Garrett, one of the patentees, dated in 1789, in which he expresses a willingness to convey his title to the complainant, and an unrecorded deed, executed by Johnson, the other patentee, in 1790. These the complainant has exhibited in his bill, as evidence that his equity was recognized by the patentees, and therefore he has a right to the legal estate, which has been since conveyed by Johnson and Garrett to Daniel Callaghan, and by him to those purchasers whom the complainant below charges to be the guilty purchasers of the same claim. As to the letters of Garrett, they do express a willingness to convey his title; but it is in pursuance of the contract which he had given, being surrendered to him, which is, no doubt, his contract with Worthington, by which he supposed himself bound. We have already seen, that Worthington had no claim to the title in equity, and that it was vested in Daniel and Patrick Callaghan, to whom the land in equity belonged; and, therefore, any obligation of Garrett to convey to others, ought not to he enforced, over the head of this preexisting equity, wherever it appears. Here, the equity of the Callaghans is evident, and might have been known to the complainant below, long before the date of these letters, although he did not know it when he first contracted with South.
4. The simple story is this: Johnson and Garrett procured these claims from Worthington, who had no authority from Daniel and Patrick Callaghan to sell by this contract, or by Worthington’s assignment. *374 iliej procured the legal estate, part of which they in* tended to keep themselves, and part they engaged to convey to Worthington, when the whole, on the face of' the transaction, ought to go to, the Callaghans. This, their contract with Worthington, ought not, then, to be enforced, when the equity of the Callaghans is apparent, even though the patentees, or either of them, have by letter or subsequent engagements recognized it. Besj,jes? ^ appears that after the death of Patrick Callaghan, the whole was conveyed to Daniel — his own claim in his own right, and the other as heir to Patrick, in discharge of this original prior equity. If, then,, the present holders have combined, by subsequent deed, the legal estate with the prior equity of Daniel Callaghan, they ought not to be disturbed, in favor of the supposed equity of the complainant, of a subsequent date.
The union of the legal title equity, Win defeat’inter-veningequi-iahle titles.
A court of chancery will bill in?behalf of a prior ,(grantee, against a ju-torelievehim from the consequences of had hi.™eed recorded ac-«ordingto pears thatthe prior equity was in the ju-mor grantee.
5. The deed presented from Thomas Johnson, one of the patentees, presents a question somewhat different. This is not recorded, and the conveyance made the devisees of said Johnson since, in 1799, is duly recorded in the proper office, under which the purchasers derive their title. If they had actual notice of this pr¡or deed by Johnson, before they received their’s. from his devisees, the claim is available against them, in a court of law, and therefore there is no necessity of application to a court of equity. If, on the contrary, these purchasers had no actual notice, this deed of Johnson to the complainant cannot prevail against them, ei~ theratlaw or in equity, according to the provisions of our 3ct °f assembly regulating conveyances. We would not be understood to say, that a court of equity would, in no case, give relief against a subsequent re-corc]e(j conveyance, in favor of a prior deed not recorded, where the subsequent grantee had, actual notice of the first, and decree the subsequent deed to he released, lest, through time, accident or the death, of; witnesses, it might become an available claim, when, in Us inception, it was invalid at law. But assuming, for the sake of argument, without expressing any positive opinion on the abstract question, that equity would afford, such relief, it does not follow, that if in such case the holder; ■ of the subsequent deed should show, that although his deed did not pass the legal estate, because of the prior conveyance and notice thereof, yet he ought to have *375 the legal estate, because he has the prior equity, that a court of equity would interfere in favor of the holder of the first deed, who had not, find was not entitled to that prior equity. Indeed, it . is evident that equity would not interfere under such circumstances, and that it would leave the holder of the first conveyance to his remedy at law. This is precisely the present case. We have seen that Daniel and Patrick Callaghan had the oldest equity, and ought to have had the legal estate; that through the act of Worthington, they were stripped of that legal estate; and that Daniel Callaghan, having received the conveyance, has granted to the present purchasers; that it turns out that one of the patentees had made a previous conveyance to another, not possessing this ancient equity, and that this grantee seeks relief against Daniel Callaghan’s grantees, who are now unquestionably entitled to his ancient equity. Against them no relief ought to be granted, and the complainant below must be left to assert this claim at law, if he can. On no ground, therefore, do we conceive the complainant below entitled to relief against the present holders of the land under Daniel Callaghan, and the decree against them and him is deemed erroneous.
The rescisión a contrast Account oT material facts having been hr part°eSi
6. But we do not conceive that the complainant below is entitled to no relief against some other of the parties in the cause. It is true, that South was not bound to convey to him, or to warrant the claim; that h,e was only bound, by the terms of the contract, to assign the bond of John Martin, and to cause Hoy to assign the cj.aim on Patrick Callaghan. It is, however, evident, from the contract and his own answer, that he deceived the complainant with regard to the true situation of the title which he sold. He denies that he had any thing to do with the contract between Hoy and Patrick Callaghan, or that he was a partner in it, when his own bond alleges the contrary. He insists that the claim derived from Worthington is the only one with which he was acquainted, when, by his bond, he sold a quite different equity derived from the Callaghans; and we have seen that the equity of the Callaghans is the important point, and that from Worthington is nothing. There must, then, to say the least of it, have been a fatal mistake by each party, which would demand redress. He admits that he did not tell that the *376 legal title was in Johnson and Garrett, and his writings seem say Ibat it was in the Callaghans. This was an unpardonable concealment of truth, when he knew it. He sold both claims, when the contract between Hoy and Patrick Callaghan Was for the claim of Daniel also, to which Patrick was not entitled. Under such circumstances, the complainant below ought not to be bound by it, and is entitled to a rescisión, and a restoration of what he has paid.
Partial compromises enA tered into when tho fraud wasun-known, and factsconceal-ed not understood, will the injured0 party from demanding a soision of the contract, if Justice otherwise requires
fn controver-siesarising on land' the real representatives of the parties to the ought*to*be parties.
7. The remaining question is, ought the complainant to be barred from this relief by any of his subsequent acts? We conceive not. It is true, he took back his bond for one hundred pounds, and agreed to pay it conditionally, if he got more than 000 acres. In this, he only exhibited a willingness to get what land he could, an<^ no*; re^ease lhe effect of any imposition upon b™ in the original contract. It is also true, that he divided with Hoy, by taking an assignment of the claim of Daniel Callaghan, leaving that of Patrick to Hoy: but then he was still under the same delusion about the title, into which South had led him, and in which Hoy, who was to assign for South, contributed to confirm him. besides, in this act he only divided the land, and he was under no obligation to hold it jointly forever. It is also true, that'he assigned the title bond from Patrick Callaghan to Martin, and by South assigned to him, to Hoy. This, however, was induced by the same deception produced by the acts of both South and Ploy ; and’ a court of chancery is adequate to take this bond frorp the hands of Hoy’s representatives, and cancel the assignment, and restore it to South, which can be done when the contract is set aside. We would, however, here remark, that there is a defect of parties, necessary before the court can accomplish these things.
8. The controversy is about landed contracts, in which the legal representatives of Hoy may have a deeper interest than the personal, and his executors a*onc have been brought before the court, and it will be necessary to bring his heirs or devisees into- the cause by proper proceedings, before these things are consummated.
9' ^ie representatives of Pawling, who hold the judgment against the complainant below, it would seem necessarily to follow from this opinion, that some opinion ought to he delivered as to their interest in this *377 ‘contb&fersy. They gof'Vthe decree of the court below in -.tbeir favor; of eg^feev: they coulcUnót be joined in this" writ ,of - error ag'plaite^p.’" From -the pectrjliarity of the' proceedings in chájÉÉfe, the wide diffmsenee’there isbetween them aná tppp^f a court ¿many parties, and the n umerods1 decrees th^t .nfay-lie' fénffer-ed against and -for them, at difFerefií-stími|,hihitthe-sájh,e stiit, instead of*a judgment, whi'ShlS getí^rálly .an'unit in the ré'4t>rjd'of-a'sttiratlaw, a-.y\ti;it.''(Jf.Srybf, -in''itS'Ori7 gindl/ohp’áfcter^bútibadl.y siíitl, cfécrees'.i,ñ£chanc‘e'ry';’ and, ipyteéH,- it was.oTiginally unknbwn>'ibf >án appehi LrougJtt'J;6h.e whole 'record to the' revMjíg cohrt.'' jEts' application id' decree's, howev.erj has bbe'n long inctul^p ed ■ÍJr«t'hih‘eoürt,'as a-novelty intfoáüce.'ébby legislative prbyisíóña,., .UódSr such.circumstances, it hás b'écdipé théduty-bi'Áiscourt, under the powéryitkjjo'sse'ssdsgcif reg'ulatihg^itsiown practice, so to mb^ek-tpe writ asi to suit the cage*;- and it is- an established- practice,; fpat pities who' are,;not{pártiés 'to the -writ of 'error," but •wlip até1 Or may be aáectefl.'by Wfeveí-salJ shaíl’be sum-irto'bedvand'thus made phrti'es here,’before* the cause is triech - This we have 'directed in the present instance; btt't-.fiáv4vhé'céiv'ed "for, answer*, that the administratrix of ■Paa'lmg ‘is dead', and that there ps now no personal reJtfe9¿Étettiye;'* Jí(JnáS: such circumstances, we con-ó’dive.'thafnw'e caífSói* protract the cause, now much too aireie'af .iiffqveby-dburt where it has been, any longer, anch'thafc wé cannot refuse, for this cause, the plaintiffs in. thé writ of error that redress to which they are entitled. But we cannot give any decree, or direct it f o he . done in the court below, operating against Pawling’s estate, or enjoining the judgment, and must leave the complainant below to take such measures in that court, if any exist, to be relieved against this judgment, or against South, as he may be advised, and as the law or equity may afford.
It is tfejirac-ticG oftKe court ol ap- , m ■peals to sum-v mon parties who may be affe<3ted by. 4 reversal of a decree, but .aré notparties to »fche •writ'of eiglpj-, and thus ma-ke them - pasties to the writ of érrtir, before the trial.
The decree is, therefore, reversed with costs, except as to Pawling’s representative, and the cause remanded, with directions to dismiss the bill with costs, as to all the defendants there, except South and Hoy’s representatives, as to whoip, further proceedings may pe had, • not inconsistent with this opinion.