The following remonstrance against the rule of practice, established by the foregoing opinion, was prepared by Benjamin Mills, Esq. late one of the judges of the appellate court, and presented, by the counsel for Young's administrator, as a petition for re-hearing.

The undersigned has noticed with some degree of pain, the decision of the court in this case, reversing the established doctrine and practice of the court, for Upwards of thirty years, without a single case to the contrary. He is not concerned in this case, but will beg leave to offer bis remarks thereon, as amicus curiae, from these motives.
1st. It will affect, materially, other cases pending,, when, from the precedent here, the cases will be concluded, if a precedent on such a point can become conclusive, which is opposed to such a host on the opposite side.
2d. He feels well satisfied that the case may furnish, a pretext to the vulgar and thoughtless, and the enemies of justice, to assert the “glorious uncertainty of the law,” and before that, confidence in the stability of o.ur institutions, which ought to be inspired and preserved.
It wonld seem to be inferred, from sonv' expressions in the opinion, that the proper rule for the chancellor- *420 is, to notify the parties to the contest, of the absence of other parties; and at other times, it seems to be. conceded that the chancellor is not bound to do so. Some of the the conclusions are drawn from the first assumption.
Petition lora re-hearing.
I hold it to be a clear and indisputable rule, that the parties may try at their peril, and that the chancellor may hear the case, between parlies present, and “give his first notice by a positive decree, disposing of the bill, and thus shewing that more parties are wanting. Indeed it is laid down in the books, frequently, that the chancellor may, in his discretion, do so, and notify the parties by a decree nisi. If he has such discretion, it is not the subject of revision in this court. If it is, it is no longer discretion, but positive law. Indeed the position that the chancellor may notify the complainant, that he has not the necessary parlies there, and direct him to bring them in, is one of very doubtful policy, and hardly consistent with the principles of justice, and were it res nova, I am convinced, would never be adopted in the American states, whatever might be the case in England, where the chancellors sometimes assume the prerogative of disposing with positive law', statutes not wscepted. It is doing neither less nor more than turning the chancellor into.a solicitor, to give advice to litigants, to nprse their cases well, and then to hear them after they are well prepared, to insure success; and what is still worse, it is always partial advice. It is given to complainants only, while defendants must do without it. To deal even handed justice, would it not be right to extend it to defendants, and to allow the chancellor to tell them that their answers are deficient for the most of certain allegations, or in not relying on certain points of defence, and finally, that such other additional proof would place their cause in a much better situation? Such a proceeding might shock us with the chancellor, but it is nothing more nor less than what is done in favor of the complainants, in instructing them kindly how to arrange their bills, to gain their causes. Indeed, the evils of it may be demonstrated in the case now reversed, one side, to-wit: the complainant is advised by high authority, that the cause is a good one; the precedents are cited to shew that thp law is *421 in his favor, and he is directed to shape his bill, which was once dead, but now brought to life, so as to sueceed on the return of the cause. No such power was ever assumed by a court of common law. There the party, who comes without other necessary parties, must go out of court, without any amendment or instructions, and why? Because the law abhors the idea'of a judge turning counsellor, for either one or both the parties. Unbiased, he ought to decide the case as brought before him, without telling either side how to prepare. The same reason ought to apply in equity, and the rule which allows the chancellor to act otherwise, is the offspring of illimitable power of English chancellors. It may be said it is too late to expunge the rule; but certainly it is not too late to refuse to extend it; and indeed to introduce it into the appellate court. 1 beg leave to protest against that tribunal becoming the advisers of one side only, in obedience to a rule of doubtful policy.
Petition for a re-hearing,
Another general observation may'apply here. The rule which requires all parties concerned in interest to be brought before the court, is not itself inflexible, but may be accommodated to suit the convenince of the parties. In proof of tins, I will refer to the case of Windell vs. Van Rensalear, 1 John. Ch’y. Rep., 349, and authorities there cited. The chancellor may consequently decide' the merits sometimes without such parties, from reasons not known in the record, but omitted through careless preparation; and this court reversed, in a similar case, Crew vs. Callaghan, and 3 Litt. Rep. 365. If, therefore, the chancellor may decide the merits, when all proper -parties are pot there, and sometimes has done so, without suiBcient reason, the only correction which ought to be applied, is to correct his decree, and not draw him back and order him to go again in a case where, from his own discretion,- he is not bound to go at all.
If the chancellor does dismiss the bill absolutely, when he ought not to have done so, because the proper parties were not there, one of two presumptions arise from the record. The first is, that he mistook hisdaty so far as to decide on the merits, when the rules of equity forbade him to do so, for the want of proper parties. The second is, that he well understood his duty, and *422 intended to direct the cause correctly, by dismissing the bill, without prejudice, and that in delivering his decree, ore terms, he unintentionally omitted the words, “without prejudice,” or spoke them, so that the clerk did not understand them; or that the words were delivered, but the clerk, hastily, or unskilfully, or by a lapsus calami, omitted to record them by a mere clerical misprision. The last of these presumptions above, was indulged, by not only the late, but the former judges .of this court. The first is taken by the present judges. Now let the appeal be made, which is most decorous and respectful to the inferior courts, the ancient rule or the one now adopted? Which is the most consonant with the presumption against the acts of inferior tribunals, which the law prescribes? Certainly the latter. The revising court is bound to presume that the inferior tribunals have done right, until the. contrary appears. And if error does appear, and it can be accounted for, by inadvertance, improvident acts or clerical mistakes, that mark, to account for it, must be taken, and it is due to the inferior courts, where business is transacted originally, often in hasie, and sometimes in confusion. Applying this rule to cases like the present, and what is its operation? Why, simply this, the chancellor has gone right as far as he has gone, but there is an iuadvertant omission or clerical mistake in leaving out the words “without prejudice.”
Petition for a „e-hearing.
Here I will note the distinction in cases of error in this court, between those decrees and judgments which have adjudged or decreed, what ought not to have been granted, and those which have given proper redress so far as they have went, but have stopped short, and not added something to make the remedy complete, and entirely conformable to the rules of law. In the first class, this court must reverse and direct what kind of judgment or decree ought to have been given. In the latter class, strictly, there ought to be no reversal. But a mere correction ought to be made by directing the deficit to be added. The act of Assembly supposes partial reversals and corrections. It is, therefore, absurd to say that the decree or judgment which is right, ought to be reversed, because it did not go far enough to come to the complete measure *423 of right. It ought to be extended only, and that width is rightly done be permitted to stand. Many cases of this class might be particularized. An executor or administrator may be called to account by a legatee or distributee. The defendant may contest the right of recovery, and may add that if he is forced to pay over the estate in his hands, he requires bond and security to indemnify him against subsequently appearing debts? which bond has not been tendered. The cause progresses and the court decrees in favor of the complainant, on incontestible evidence of right, but omits to add the requisite, that bond and security shall be given before the payment is made, and the defendant appeals. "What then is the proper course here? Certainly not to disturb that which has been rightly settled, but simply to direct the addition to the decree, that bond and security shall be given before the righteous and undisturbed decree shall be enforced.
Petition for at re‘heannS-
An inferior court renders judgment against anexecutor or administrator, in his fiduciary character, for a money demand, but neglects to add, “to' be levied of the goods and chattels which were of the testator or intestate, at the time of his death, and which have' come to his hands to be administered.” The proper correction here is not to disturb the judgment, and direct the cause to “stand in the attitude, precisely which it occupied before the erroneous” judgment “was rendered,” as is supposed in the opinion of which I complain, but barely to make the correction by adding the omitted clause.
Again, a plaintiff under the act of assembly, sues on a note engaging expressly? the payment of Commonwealth’s paper, and makes his endorsement of a willingness to accept paper of the Bank of the Commonwealth, and the court below refuses to scale the demand, but renders judgment for the nominal amount, omitting the words, “to be discharged in paper of the Bank of the Commonwealth,” which on its face would demand specie. In such cases it has never been the practice of the court to place the parties back, “in the same attitude precisely,” in which they formerly stood, by disturbing what the court had rightfully done, and *424 had the right to do; but invariably this court has direct ed the omitted words or clause to be added to the judgment.
Petition for a re-hearing
So a decree may rightfully decree a sum of money; or correctly dismiss a bill, but stop short and fail to give the costs which ought to follow the decree. The proper course is to direct the costs to be added, leaving the first part unmolested. Cases of this kind might be multiplied to a tiresome length, but hiore is unnecessary. Precisely of this class is the case under consideration. The court below has done what it had a right to do, by law, and of course it has done right, and cannot be controlled; but it has barely omitted the phrase, “without prejudice.’ That simply ought to be added, instead of waking up the whole cause and giving to the plaintiff all the advantages which he could have had, if he had committed no error.
It is worthy of enquiry here, who has committed the error of a bill defective in parties, and who is allowed to take advantage of that error? Is it not the complainant? He prepared adefective bill; he caused bis adversary to take issue on it; to adduce evidence; to employ counsel; to wade through'á tedious litigation.- fie pressed the trial and demanded a decree on a bill, which entitled him to.none. The chancellor dismissed his bill, but failed to add the expression, “without prejudice,” or the clerk left them out. He sues out a writ of error; causes his adversary to travel through the litigation of this court; to employ new counsel. Over the head of his own error, or rather by the force of his own error,- he reverses the decree; leaves his adversary to pay costs here, at least his own costs, and then returns to the court- below; triumphant, by his own wrong, and loses nothing; but is possessed of every advantage that he would have been, if he had committed no error. Can this be right?- Ought thereto be no penalty on such conduct as this? Will the chancellor, who is characterized by plain sailing and fair dealing, permit this? It is conceived that this ought not so to be.
It will be easily seen that all this reasoning conflicts with the principles assumed in the opinion of the court. It is there taken for granted, that the error is not a *425 hiere inadvertence; not a clerical misprison; but the effect of the ignorance of the chancellor below; and what is more, it is supposed that if the chancellor below had discovered the error at the moment, be would have notified the party complainant, of the want of parties, and have given day to bring them in, instead of dismissing “without prejudice.” This is conjecture only. The chancellor there might still have dismissed the bill, if the error had been pointed out, and can it be assumed that he would have acted otherwise? And can it be proper to reverse the decree and send it back, to try him, and see whether he will or will not dismiss? Surely for such a trial and such an experiment, which may still be fruitless; which may go before a different incumbent in office now; or may depend on the feeling of the present chancellor, no decree ought to be reversed, in favor of a man who has committed the error himself, of which he complains;
Petition fora re-hearing:
But what ought to be said with respect to authority. Surely no principle could produce so many precedents; If the law in that respect be not settled, what can ever settle, law? I would rely, not only on the cases reported, which touch the subject, for they, although nurherous indeed, are comparatively but few, compared with the numerous cases on record, not reported; Perhaps it would not be extravagant to say that more than twenty cases of a term, and at each term, has accrued, in which, conformable to the settled rule, there being, without any written opinion, entries made on record, correcting decrees by adding “without prejudice.” Such was then the measure Of justice which all knew and expected; now a different measure is granted, without any legislative act, from the same court, because there has been a change in the judges? Can there be an hour at which such a question can be put to rest? If there can be, the hour had come. If there cannot be, then the question is a nondescript, incapable of stability, but subject, like the perpetual motion, to a change every time there is a change of Of judges. For surely the successors of the present-members of the court, may go back to the old ground; fully justified, by the present judges assuming the new*
Petition for a re-hearing. '
It seems to be assumed in the opinion, thatthe ques« tion is one of mere practice, made to govern the court, and not affecting the rights of the parties. With due deference, it is conceived that the rule is one which operates on and affects the rights of the parties. If it does not, it cannot be, in the language of the court, “an important question of practice.” The court has named the delay of chancery suits in this country. Delay in chancery in every country, is justly complained of, and why? Simply because chancellors become the nursers of suits, by rules like the present. If they would act as common law judges, instead of advising parties how to proceed, the chancery docket would move as rapid, as the files of common law. Why has not the contrary rule at common law multiplied suits? It has never done so, and we may compare the chancery docket with those at common law, throughout the country, and- the former is the greatest.
This decision, if it is to be published, will not only awaken the astonishment of legal characters, but revive a spirit of litigation. Many suits, from the number heretofore brought to this court, must have had decrees rendered of absolute dismission, when proper parties were wanted, and which were suffered to slumber, because, under the former rule, if the decree was corrected, lapse of time would setlle the matter. But now they can, under the present decision, reinstate the same suit.
I observe that it is noticed in the opinion, that if a new suit is to be brought, the intervening circumstances of time or death, may preclude a recovery. This, to my mind, is a strong argument in favor of the new suit, and against the reinstatement. Why should the complainant, who alone has been guilty of error, in relying on a defective bill, be relieved from the consequences of time or death, more than the defendant? The death of witnesses for defendant, whose testimony would have settled the cause, with the proper parties then, may leave the defendant now, defenceless. See the great length of time during which a suit may slumber, or be dead, and yet be brought to life, without being compelled to acknowledge or count the chasm of time, or the hours of its death. The complainant may *427 wait three years, then begin his writ of error, which may, and probably will, extend three more, and then have his suit reinstated, without suffering any inconvenience from this lapse of time. His old suit will be as good as ever, and not be injured by either time or death! Certainly this is allowing more than equity requires.
Petition for a re-hearing.
But the cutting off the rights of defendants, to rely on all this lapse of time, when it operates in their favor, is a strong argument against the rule now adopted. Why should they lose the time which has elapsed, without any pending contest, and without their fault? Indeed the consequences of such a decision may produce a serious result to the country. When the first day of January, 1816, drew near, the dockets of the country, especially those north of Kentucky, were crowded with landed controversies. The complainants frequently had defective titles, and other parties were necessary to make their titles good.. Their bills are dismissed on the merits, and they now, under the new rule, may bring up their causes and reverse the decrees, and have their old suits reinstated, after the defendant’s testimony is gone, and he himself is not allowed to plead the limitation of seven years, to real actions, although the time has really elapsed. For this reason, the present rule is objectionable.
But other perplexing questions follow this disturbance of the ancient rule. In the close of the opinion, it seems to be admitted that there may be cases, when it will be improper to do more here than to correct the dismission, and by adding “without prejudice.” To classify such cases, gives me trouble, unnecessarily. If the bill was defective in equity, the former judges would give no relief by even adding, “without prejudice;” and this is supposed to be still the rule, because it cannot be right to redress a party who has sustained no injury, by losing a bill that entitled him to nothing. But suppose the bill to be good, and to state a case pregnant with equity; that it is controverted by the answer, which in turn, exhibits a case that shows that the plaintiff cannot recover; that the parties proceed to take their proof, and the result of all, is in favor of the defendant. But there is a defect of parlies, and *428 on final hearing, the court absolutely dismisses the bill. Would not this court reverse and send the cause back for new parties? Suppose the case was one attended with an injunction on a judgment at law, and on gnal hearing, the injunction was dissolved and the bill dismissed, because there was no equity in the proof. If the decree is here reversed and the bill reinstated, with leave to make new parties, in the court below, what is the consequence? Why, a perpetuation for a time at least, of an injunction, and delay of justice in a case, when the complainant had no equity. Such must be the consequence under the present rule. It may be said that the court here might remedy this, by permitting so much of the decree as dissolves the injunction to stand, and only reversing that part which dismisses the bill. It may as well be said, that the decree dismissing the bifl might be let to stand also, and only the addition put to it “without prejudice.” There is as much room for one as the other, for if the chancellor below had been disposed to render a decree nisi, dismissing, unless the proper parties were made, he might not have dissolved the injunction, and it is uncertain whether he would or not.
tention for a re-hearing.
Or will the court only apply the rule to a case when not only the bill, but the proof shows equity? This was not the former rule. The court formerly acted on the face of the bill only. If that contained equity, the dismission was corrected by adding “without prejudice,’’and this is certainly correct. For as the chancellor below heard the case prematurely, when the proper parties were not there, it follows, that the complainant had not closed his proof, and that if he had, on the introduction of new parties, he would have a right to introduce more. If then, the circumstance of there being equity on the face of the bill, requires the present rule to be applied, it follows that parties, with pliable consciences, who can place a plenty of equity on the face of their bills, without any existing in fact, can, under the present opinion, protract litigation to an intolerable and burdensome length, without any justice or equity actually existing in their favor.
This remonstrant could add more to what he has¡ said, but he fears he may already tire, by too much» *429 It is with the highest respect for and deference to the tribunal, which he addresses, that he presents these views on this subject. MILLS.
re-hearing,
Jg“ns®0 ¿epetition for a re-hearing,
As counsel for Young’s administrator, and for the reasons within suggested, by Mr. Mills, I venture, respectfully, to solicit a re-hearing on their case.
CRITTENDEN.
2b this remonstrance and petition, the court, by judge Robertson.i delivered the response, as follows:
The court feels no disposition to dismiss the subject of the petition; as a rule of practice, it has been settled for ourselves, or rather the old rule has been unsettled. We do not mean to re-establish it. In changing it, we felt and still feel sure, that we neither meant, nor manifested irreverence to what is venerable; and we felt and yet feel, not the slightest apprehension, that we violated any principle of equity, or rule of either legal or moral right, or that any consequences of hardship or injustice, will or can result from our act.
The practice which we have discontinued, was unreasonable. It was, so far as we know, peculiar to this state. It could not promote the ends of justice; it might, and frequently would produce glaring injustice, and irreparable injury without any reason for it.
The rule was old, but its antiquity alone, does not commend it. It is no.t sacred and inviolable, merely because it is ancient. Error, is not less error; because it has become gray with age. Time which makes it venerable, renders it the more alarming and piischieyous. No right, which had been affected by the old rule of practice, can be so changed or touched by its abrogation, The petition, misconceives the vgffect of our opinion. We would only leave the chahcellor, (as a general rule) free to exercise his discretion, In some cases, as our opinion indicates, the old rule would be enforced. We only mean, that there should benoarbitrary and inflexible rule on the subject. We feel no inclination to enlarge on the reasons suggested in the opinion. They seem to us, so plain and striking, as not to require any new illustrations. A defendant in chancery, cannot complain, that a decree in his favor, *430 was improperly rendered, absolute, for want of parties merely, when it is reversed, as he knew it must be, the case shall be remanded, to stand as it did, before it was dismissed. The delay, which a defect of parties may have occasioned, is generally to his advantage; and it has resulted, as much from his fault, as that of the complainant. If he desired despatch, and nothing but fair play, why did he not demur to the bill, if the defect of parties appeared on its face, or plead in abatement, if it did not? When he has no equity or right to sustain him, and has no resource, except the perplexities, and uncertainties of pleading, from which he can derive any hope of frustrating or postponing justice, why shall he be permitted to lie in wait and be protected from just claims, by an error which he has contributed to produce? We stated that it would generally be prudent, for the chancellor to see that proper parties are before the court, or that the com-. plainant, shall be advised, who are deemed necessary parties by the court, when the defendant lies by, and does not object, that there is ány' want of parties, and we did not suppose, that it was necessary to do more, than to cite the authority of this court, in the case, in 2 Marshall.. In that opinion,, written by judge Mills, the following language is used, “and then the chancellor will frequently, in his discretion, render a decree, nisi, that unless the necessary parties, are brought before the court, on or before a day given, the bill shall be dismissed without prejudice,
Response of judge Robert son to the pe tition for a re-hearing.
As the petition seems to consider this doctrine novel, and pregnant with mischief, it may not be amiss to refer to some other authorities. 2 Maddock, 141; after remarking, that the defendant ought to object to a want of parties by demurrer or plea, says, (when the defect is discovered at the hearing) “in such case, the bill is not dismissed; but the cause will be ordered to stand over; the usual order being, to “let the cause stand over, with liberty for the plaintiff to amend the bill by adding parties.” “Where it appeared on an appeal, from a decree at the rolls, that parties were wanting, Lord Thurlow, ordered the cause to stand over, with liberty to the plaintiff, to file a supplemental bill, merely to add parties.”
*431 Quotations could be multiplied from Britisli'Reports, ancient and modern, and fro,m American Reports, to shew, that it is proper to give time to bring the necessary parties before the court, whenever they are seen necessary, either by the complainant or by the court. The reasons of the practice, is to do final justice, and prevent unnecessary expense, and multiplication of suits. As however, we do not intend to argue the question, we will forbear. The chancellor will not ¡however be controlled in his discretion, to give leave or not.
The abolition of the rule, followed by our predecessors, instead of encouraging litigation, will curtail it evidently, so far as it may have any practical effect; and it will tend to prevent legal fraud and judicial smuggling.
If a pernicious practice has been tolerated Hhirty years f the reason is the stronger, why it should be now discontinued. It has operated long enough; “malus usus abolendus est.'’’’