## In re DUCKER.

(District Court, W. D. Kentucky. June 25, 1904.)

1. CONDITIONAL SALES—EFFECT—STATE LAW.

Under the law of Kentucky, a conditional sale of merchandise, by which the seller retains title until the purchase price is paid, and has power to retake possession if the price is not paid, is an absolute sale, with a mortgage back to secure the price.

2. BANKRUPTCY—CONDITIONAL SALES—FAILURE TO RECORD—CREDITORS—PRIORITY.

Ky. St. 1903, § 496, provides that no deed of trust or mortgage conveying real or personal estate shall be valid against creditors until acknowledged or proved according to law and lodged for record; and Bankr. Act July 1, 1898, c. 541, § 64, cl. "b" (5), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], provides that debts owing to any person who by the laws of the states or the United States is entitled to priority shall have priority in bankruptcy. Held, that the seller of merchandise to a bankrupt under an unrecorded conditional sale, though entitled to priority as against prior creditors of the bankrupt, was not entitled to priority as against subsequent creditors without notice, notwithstanding such creditors had no lien or "hold" on the property, other than the caveat afforded by the bankruptcy adjudication.

Wm. M. Smith, for the Shuster Co.
Benjamin F. Washer, for trustee.

EVANS, District Judge. The bankrupt resided in this district, and did business here. Upon his petition the adjudication in this case was made February 29, 1904. Various creditors proved their debts as unsecured. The T. B. Shuster Company, of New Haven, Conn., having made a conditional sale (as it supposed) to the bankrupt of certain merchandise which it delivered to him in Louisville, Ky., the parties entered into a written agreement by which it was stipulated between them that the title to the merchandise should remain in the seller until the purchase price was paid, and power was given to it to retake possession of the property and remove it if it was not paid. This being precisely such an agreement as the settled law of Kentucky makes an absolute sale, with a mortgage back to secure the purchase money (Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146; Welch v. Cash Register, 103 Ky. 30, 44 S. W. 124, and cases cited), the Shuster Company has proved its claim as a secured debt. The date of the agreement was January 11, 1904, and, though it was in writing, it was not recorded. Subsequently to that date, and after the delivery of the merchandise in Louisville, certain persons extended credit to the bankrupt, and thereby created the debts they have proved in these proceedings. In the contest between them and the Shuster Company, before the referee as to priority of right in the proceeds of the merchandise, the referee ruled against the Shuster Company; holding that, as it had failed to put its mortgage to record, the subsequent creditors had the better right. The company has brought the case here for a review of that ruling.

It may be remarked that certain of the bankrupt's debts were created before January 11, 1904, and before the merchandise was delivered.

This class of debts may be laid to one side, as, under the Kentucky law, the holders of such antecedent demands have no interest in the questions now under discussion, unless the proceeds of the merchandise shall exceed the amount necessary to pay the subsequently created debts and that of the Shuster Company. Of this there is no possibility. The claims of the subsequent creditors, however, depend upon a provision in the Kentucky Statutes about which there has been much discussion, which it cannot be said has removed all doubt—doubt which the discussion itself, rather than the statute, has largely created.

Under the provisions of section 64 of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], among the "debts which have priority" are—clause "b" (5)—those "owing to any person who by the laws of the states or the United States is entitled to priority." It is therefore essential to ascertain whether the Shuster Company, holding an unrecorded mortgage, is, or whether the subsequent creditors are, entitled to priority of payment out of the merchandise or its proceeds. The Kentucky statute must furnish the test. This is expressly demanded by the clause in the bankruptcy act just quoted, so that upon that statute alone, and its construction by the Kentucky Court of Appeals, the decisions of the pending questions must turn. The applicable Kentucky Statute (1903) is in this language:

"Sec. 496. No deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deeds shall be acknowledged or proved according to law, and lodged for record."

This statutory provision has, in substance, long been embraced in the laws of the state, and, as has been stated, has been the subject of many, not to say various, judicial decisions. I need not undertake to enumerate or state them. Suffice it for the present to say that certain propositions respecting its construction have at last been definitely settled. Among them are the following: (1) That debts created before the mortgage cannot have priority over it, whether it is recorded or not; (2) that, whether recorded or not, the mortgage is good as between the parties thereto; (3) that it is good, also, as against a creditor who has notice thereof before extending the credit in which his debt originates; (4) that it is good against a purchaser who before the purchase has notice of it; and (5) but for one expression in Wicks v. McConnell, 102 Ky., at page 439, 43 S. W. 206, and the opinion of Judge Cochran in the case of Sewell, Bankrupt (D. C.) 111 Fed. 791, we would say unhesitatingly that it had also been settled that the proper construction of section 496 requires that every subsequent creditor, who, before his debt was created, did not have notice thereof, should be adjudged an absolute priority over the holder of the secret and unrecorded mortgage. The expression to which I have referred in the opinion of the Court of Appeals in the case of Wicks v. McConnell, 102 Ky., at page 439, 43 S. W. 206, is this:

"On the one hand, the unrecorded lien is upheld as against creditors who cannot be presumed to have given credit upon the faith of the property held in lien. On the other hand, creditors who may be presumed on such faith

to have given credit are protected, as against the secret lien, *in the rights which they secure by their diligence in the levy of their execution or attach-. ment."*

If this was meant to be a construction of the words of the statute, it would be our duty to follow it; but a very careful examination of the whole subject has brought me to a clear conviction that, in adding the words I have italicised in the above extract, the court did not mean nor intend to make that state of case a condition precedent to priority in the subsequent creditor, but used the language to emphasize the clearer equities of the case with which the court was dealing. In that case there was in fact an attachment, so that there was no occasion to discuss, and the court did not discuss or mean to dispose of, a case where there was no attachment. The question was not mooted. The words we have noticed were incidental, and there is nothing in the reasoning of the court in the opinion, nor in its discussion of the interpretation of the statute, which shows or suggests that the element of the case thus referred to furnished the ratio decidendi. The record showed that in that case there was a levy of an attachment, but I am very confident that the decision must have been the same without it, when former rulings are considered in connection with the statute itself, which in no way expressly makes an attachment or execution necessary to defeat the priority of the secret mortgage. Suppose the debts have been created subsequently to the mortgage, but too late for an attachment (for which there must always be statutory grounds) or an execution; must such a creditor lose a priority expressly given by a statute which in no way mentions either?

Under the Kentucky Code of Practice, in order to obtain an attachment against the property of a debtor, the plaintiff in the action must, under section 196, file an affidavit showing the existence of at least one of the grounds of attachment prescribed by section 194, viz.: (1) The nonresidency of the defendant; or (2) his absence from the state for a period of four months; or (3) that he has departed from, the state with intent to defraud his creditors; or (4) that he has left the county of his residence to avoid the service of a summons; or (5) so conceals himself that a summons cannot be served upon him; or (6) either that he has removed or is about to remove a material part of his property from the state, without leaving sufficient to pay his debts; or (7) that he has sold or is about to sell his property, with a fraudulent intent to cheat his creditors. It is obvious that the instances in which an attachment can be obtained must be comparatively rare. Under the Kentucky law and practice, especially in the country districts, where the terms of court are far apart, it may take some time to get a judgment and an execution thereon. All this being true, a most important inquiry is, can it be that the Legislature, instead of making the invalidity of the secret mortgage as against subsequent creditors and purchasers without notice depend alone upon nonrecord, as the statute expressly provides, intended, also, without hinting at it in the section referred to, to make that invalidity also depend upon the. possibility of obtaining an attachment or execution, in this way giving the creditor who was fortunate enough to discover grounds of attachment, or to have a term of court sufficiently early to get a judgment,

all the benefits of the statute, while other meritorious creditors, whose cases come literally within the express language and spirit of the legislation, are cut out? With the lights before me, I must answer this inquiry in the negative. My conviction is clear that the Legislature did not so intend, and that the section of this statute we have quoted does not warrant any such discrimination against subsequent creditors who could not find grounds for an attachment or opportunity for an execution. The Legislature did not, in my judgment, intend to make the right of the subsequent creditor without notice turn upon the conduct of his debtor in affording or not affording grounds of attachment. The rights of that class of creditors, quoad hoc, were made to depend upon the laches of the secret mortgagee in not putting his mortgage on record, and upon that alone. A proceeding in bankruptcy is an equitable proceeding, and it seems clear to me that one of the true grounds upon which to rest the superior rights of the subsequent creditors over those of the secret mortgage is that they have a superior equity growing out of several considerations, viz.: (1) The basis of credit given to the debtor by the possession of the property, which aids in creating grounds of belief that he is able to pay; (2) the failure of the mortgagee to give them the necessary warning to the contrary, by putting his mortgage upon the public records; and (3) it is more equitable, where one of two innocent persons must suffer, that he should be made to do so who by his negligence and fault leads the other into a situation of danger. I suppose it would be admitted, and it apparently has been admitted, that the language used by the Legislature in section 496, Ky. St. 1903, has been considerably "pulled and hauled" by the judicial efforts exerted upon it; but, leaving out of view the case of a "purchaser for a valuable consideration without notice," it would seem, when reduced, under the guidance of the decisions, to its ultimate analysis, that the section must be construed as if it read thus: "No mortgage conveying an equitable title to personal estate shall be valid against subsequent creditors having no notice thereof before the creation of their debts until such mortgage shall be acknowledged, or proved according to law and lodged for record." This seems to be the exact meaning of the statute when considered with respect to the rights of subsequent creditors and the holders of a secret mortgage. Nothing is said about an execution or attachment or other "hold" upon the property. As to subsequent creditors without notice, the invalidity of the mortgage is made absolute, unless it is acknowledged and lodged for record. Undoubtedly there may be room for the suggestion that considerable interpolation has been indulged in by the courts, but that does not concern us, where there has certainly been a "construction," whether by that means or another. What we are to ascertain is the "construction," and not the route thereto. As far as the Court of Appeals has gone, we must follow; but, even granting that it was forced to interpolate in order to fix the legislative meaning, that would not authorize this court to make additional interpolations. In the analysis of the section just attempted, there does not, under the Kentucky decisions, seem to be any room left for adding a proviso to the effect that the mortgage shall not be

valid, "provided the subsequent creditor has in some way and by some judicial process secured a hold on the property mortgaged." It seems to me that such a proviso was not, by construction or otherwise, interpolated into section 496 by what was decided in Wicks v. McConnell, and that it was never meant by the court to be so interpolated. This view is different from that of Judge Cochran, as announced in Re Sewell (D. C.) 111 Fed. 791, and it has been with hesitation and regret that I have found myself unable to agree with the conclusion reached by my learned Brother upon a question of Kentucky law; but it consoles me somewhat to reflect upon the frequency with which our Court of Appeals has failed to agree with itself about the construction of the same statute. Certainly, in his opinion in the Sewell Case, Judge Cochran, up to a certain point, stated with admirable and characteristic clearness the result of the numerous decisions construing section 496; but planting his conclusion upon the statement above copied from Judge Du Relle's opinion in Wicks v. McConnell, 102 Ky. 439, 43 S. W. 206, Judge Cochran, in the Sewell Case, at pages 792, 793, 111 Fed., says:

"In the very nature of things, it is only subsequent creditors without notice who have in some way got a *hold* on the property that are in the contemplation of the statute. *Without such a hold, they are not in a position to raise an issue with the holder of the unrecorded deed or mortgage.*"

It is in the language which I have italicized that Judge Cochran expresses the view that in some way the subsequent creditor must get a "hold" on the mortgaged property before he can litigate, and he seems to be of opinion that such a hold can only be obtained by an execution, attachment, or similar process. With all deference, it seems to me that there are other ways to raise such an issue between the parties as will enable the court to determine their respective rights. Certainly this may be easily done in a bankruptcy proceeding. It has been done in this case. And there is much force in the suggestion made at the argument in behalf of the subsequent creditors that in such proceeding the adjudication itself is, in effect, an attachment for the benefit of all creditors, and a caveat to all the world. Mueller v. Nugent, 184 U. S. 14, 22 Sup. Ct. 269, 46 L. Ed. 405; Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866. If this be sufficient, then the subsequent creditors have a hold on the property, and even the view of Judge Cochran seems possibly to be met. Besides, as already pointed out, section 496 in no way makes—and certainly does not in terms make—the rights of subsequent creditors dependent upon their suing out attachments or obtaining judgments upon their debts. To require them to do either solely in order to put them in position to litigate with the secret mortgagee would not only be outside of the statute, but would usually defeat the equitable advantage the statute intended to give them over the concealed mortgage. This, we think, was not intended, and especially when lodging the mortgage for record is such an easy and simple proceeding. In short, it seems to me that this superadded condition cannot be supported except by reading into section 496 a provision which the Legislature did not actually put there, and which the Court of Appeals has not put there by construc-

tion, unless it did so in Wicks v. McConnell. As already indicated, it does not appear to me that the court in this case intentionally attempted or intended to do so.

It seems to me, therefore, that in this case the rights of the Shuster Company must be subordinated to those of the creditors who became such subsequent to the mortgage, and without notice thereof. The ruling of the referee to that effect is approved and affirmed, and, in administering the fund arising from the sale of the merchandise delivered by the Shuster Company, the referee will be governed by the views herein expressed, to wit, the priority of the Shuster Company in the proceeds of the merchandise to which its mortgage applies will be subordinated to the payment of those creditors of the bankrupt whose debts were created subsequent to the delivery of that merchandise to the bankrupt, provided that if, as to any of such subsequent debts, the Shuster Company shall in due season and in proper form allege and prove that, at the time it was created, the creditor had notice of the Shuster Company's mortgage such creditor shall be postponed to the Shuster Company. The burden of proof as to such notice will be upon the Shuster Company. Calais S. S. Co. v. Van Pelt, 2 Black, 378, 17 L. Ed. 282; Carr v. Callaghan, 3 Litt. 371, 372. That is to say, if the company asserts that a creditor had notice of its mortgage, it must prove the fact thus affirmatively alleged.

A decree accordingly may be entered.