## Jewell v. Cecil, Jr.

(Decided November 20, 1917.)

## Appeal from Mercer Circuit Court.

1. Appeal and Error—Findings—Equity Cases.—In an action in equity to sell an automobile, pledged for the payment of an unliquidated claim for damages, a finding by the chancellor that pledgor was negligent and that he pledged the automobile to secure a claim for damages caused by his negligence, when ascertained, is sustained, the evidence oh these issues being conflicting and such as to leave the mind in doubt.

2. Liens—Priorities—Creditors.—"Creditors" as used in Ky. Stats., section 496, providing that an unrecorded mortgage of real or personal property shall not be valid against a purchaser thereof for value and without notice, or against creditors, includes subsequent attachment or execution creditors, without notice of the/ unrecorded lien, and excludes antecedent creditors and also subsequent creditors with notice.

3. Liens—Creditors—Unliquidated Claim.—The holder of an unliquidated claim for damages, secured by pledge or attachment, is a creditor within the meaning of that term, as used in Ky. Stats., section 496.

4. Liens—Priorities.—In an action to sell pledged property and determine priority of liens thereon, the lien of a pledgee and attaching creditor, without notice, is superior to an antecedent unrecorded vendor's lien.

5. Appeal and Error—Harmless Error.—In such action, the vendor, on appeal, cannot question the validity of a bond, under which he obtained possession of the automobile before judgment, or of the judgment against the surety on the bond, as he is not prejudiced thereby and the surety was not a party to the action or to the appeal.

6. Appeal and Error—Review—Error in Judgment.—Error of the court, by clerical misprision, in adjudging plaintiff a sum in excess of that prayed for by him, cannot be complained of where no motion was made in the lower court to correct the error.

E. H. GAITHER for appellant.

EMMETT V. PURYEAR for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In June, 1914, S. E. Elliott purchased of W. S. Farrant a five-passenger Chandler automobile for $1,835.70, part of which he paid in cash, and for the balance he executed ten notes, nine of which were for $100.00 each and the other for $85.00. In October of that year, Elliott, with a companion, was touring Kentucky, and while *en*

*route* from Danville to Harrodsburg, and approaching the foot of a long hill near the latter city, met two negroes, the one a short distance behind the other, and each of whom was riding a mare accompanied by a mule colt, the mares and colts being the property of C. P. Cecil, Jr. Elliott was driving the machine at a speed of twenty miles, or more, an hour; and, just after he passed the first mare, the machine struck one of the colts, injuring it, which caused the machine to swerve to the left across the road; to strike the other mare, breaking her leg; and to go through a guard fence, at the side of the pike, into a ditch and over against another fence. The machine was wrecked to the extent that it had to be towed into Harrodsburg and there left in a garage. The mare was so injured that she had to be killed; and the colt was permanently injured, though not destroyed.

The negroes telephoned to Cecil, who arrived at the place of the accident before the automobile was moved and demanded of Elliott payment for the damages to his mare and colt. Cecil and Elliott do not agree as to the conversation they then had, but they do agree that Cecil threatened suit, unless Elliott would settle. They then went together to Ingram's garage, where the automobile was left, and Elliott was allowed to leave the state without a suit having been filed against him by Cecil. Cecil contends that this was done because of an agreement then made between him and Elliott, by which the automobile was to be left at the Ingram garage as a pledge to secure to Mr. Cecil the damages sustained by him by reason of the injuries to his mare and colt. Elliott denied that he left the automobile as a pledge to Cecil, but claimed that it was left subject only to his own order; that he denied any responsibility for the accident and did not acknowledge any liability therefor. Mr. Ingram was present, or nearby, and heard parts of the conversation between Cecil and Elliott with reference to the accident, but he did not hear all of their conversation and was unable to tell just what, if any, agreement was reached by them. He testified that such parts of the conversation as he did hear gave him the impression that the automobile was left with him as a pledge for Cecil's claim.

After reaching his home in Michigan, Elliott wrote to Ingram, directing him to ship the automobile to him. Ingram informed Cecil of the directions he had received from Elliott, whereupon Cecil immediately brought this

action against Elliott to recover the amount of his damages, asserting a lien to secure same by reason of the alleged contract with Elliott; and, in addition, procured an attachment against the automobile on the ground that the defendant was a non-resident of the state and was about to remove his property out of the state, not leaving enough therein to satisfy plaintiff's claim, and with intent to cheat, hinder and delay his creditors. A warning order was entered against Elliott and a general order of attachment issued and levied upon the automobile.

At the appearance term of the court, appellant, H. D. Jewell, filed a petition to be made party defendant, and that his petition be taken as his answer and cross-petition against Elliott and a counter-claim against Cecil. In this pleading it was alleged that the automobile, attached as the property of Elliott, was in lien to W. S. Farrant for $385.00, part of the unpaid purchase money, by the terms of a written contract of sale under which Elliott had purchased the automobile; and that the four notes, evidencing this indebtedness, together with the lien to secure their payment, had been assigned and transferred by Farrant to Jewell on February 5, 1915; that he was then the owner of such notes and lien; and that his lien was superior to any lien that the plaintiff could have upon the automobile, either by reason of the alleged contract with Elliott or by reason of his attachment. He prayed that he be adjudged a superior lien on the automobile; and that it be sold in satisfaction of his debt, interest and costs. By an amended answer, he denied any negligence or liability on the part of Elliott in connection with the accident, or that the plaintiff sustained any damages by reason thereof, and averred that the accident was caused by the gross negligence of plaintiff's servants in charge of the mares and colts at the time of the accident. Issue was joined upon these several contentions.

Shortly after the filing of his petition to be made a party defendant, Jewell executed and filed the bond provided for by section 221, Civil Code, and asked that the attachment be discharged and the automobile be delivered to him. An order was entered approving the bond and discharging the attachment, but two days thereafter, and before the automobile was delivered to Jewell, the court entered an order that "before the said automobile shall be removed from the jurisdiction of this court from the possession of the sheriff the defendant, Jewell, shall execute in addition to the bonds heretofore given a bond in substance as follows:

"We, the United States Fidelity & Guaranty Company, undertake that if the judgment of the court shall be such as will subject the automobile to same we will pay into court in satisfaction of plaintiff's claim and cost not exceeding $500.00 such sum or sums as the court shall adjudge herein the said automobile might have been subjected to the payment of without regard to any question of the value of the property removed from the jurisdiction of the court by reason of the execution of this bond."

To this order, the defendant, Jewell, excepted, and under protest complied therewith by procuring the United States Fidelity & Guaranty Co. to execute the bond prescribed, took possession of the automobile and removed it out of the state.

The defendant, Elliott, was not served with process and did not appear or defend. By agreement of the parties, the action was transferred to the equity docket and submitted to the court on all issues of law and fact, upon evidence offered orally and by deposition; and it was adjudged that the plaintiff had a valid and just claim against the defendant, Elliott, in the sum of $400.00 and had a "valid and subsisting and superior lien upon said automobile and upon the money paid into court in lieu thereof and obligated to be paid by the bond on file herein and it is adjudged that the attachment and the grounds of attachment herein be sustained and that said automobile was subject to the said debt of plaintiff and the United States Fidelity & Guaranty Company, having made bond herein conditioned that they would pay to the court such sum as was directed in the event it was determined that said automobile was subject to said debt of plaintiff, is now ordered and directed to pay to plaintiff or to the clerk of this court in satisfaction of this judgment, the sum of $400.00 and the costs of this action."

Seeking to reverse this judgment, the defendant, H. D. Jewell, has entered a motion in this court for an appeal, and the construction of a statute being involved, the same is granted.

Four grounds are relied upon for reversal, as follows: First, that the lien of appellant upon the automobile was superior to that of appellee; second, that the action of the court in requiring appellant to execute the bond prescribed by it, before the car should be delivered to him, was illegal and void and the judgment entered thereon void; third, that the judgment was for an amount in ex-

cess of that claimed in the petition; and, fourth, that the judgment was not sustained by the evidence.

Before discussing the questions of law involved, we will consider the questions of fact decided by the court and upon which the judgment was based. To warrant the judgment, the court must have determined, from the evidence, one or both of these facts: First, that the accident resulted from the negligence of Elliott; or, second, that Elliott, after the accident, pursuant to agreement with plaintiff, left the automobile with Mr. Ingram as a pledge to secure the payment to plaintiff of his damages, when ascertained. Upon both these questions of fact, the proof is conflicting, and, upon its consideration by us, our minds are left in doubt, and we will, therefore, under the well-established rule of this court, sustain the finding of the chancellor in favor of plaintiff's contention on these questions of fact.

We will now consider the propositions of law, in the order set out above.

1. Did the contract alleged by plaintiff that, in consideration of his forbearance to sue the defendant, Elliott, the latter pledged the automobile to him as security for the payment of his claim for damages sustained, or the attachment, give to plaintiff a lien upon the automobile superior to Jewell's lien for unpaid purchase money, which had never been recorded?

Section 496, Kentucky Statutes, under which the question arises, is as follows:

"No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deeds shall be acknowledged or proved according to law, and lodged for record."

This court has frequently held that an unrecorded mortgage, or a "pocket" lien, for purchase money, such as was Jewell's, is superior to that of an attaching creditor. It was thus held that, notwithstanding the statute, courts of equity, as between parties holding equities against the property, would give precedence to the older equity in Baldwin & Co. v. Crow, 86 Ky. 679, wherein the older decisions of this court are reviewed. However, in that case, as was said in Wicks Bros. v. McConnell, 102 Ky. 434, "a distinction was clearly recognized between the position of an execution or attachment creditor without notice of an unrecorded lien, whose debt was

created antecedent to the creation of the lien, and the position of the one whose debt was created subsequently.'' It is true that, in that as well as in other opinions, the distinction between antecedent and subsequent creditors' liens is rested upon the reasoning that "creditors who may be presumed on such faith (possession of the property and the absence of recorded liens), to have given credit are protected as against the secret lien in the rights which they secure by their diligence in the levy of their execution or attachment.'' But the fact that credit was extended upon the faith of the possession of the property is not the only reason, although the usual one, that will support the allowance of a superior lien to an execution or attachment creditor, without notice of an unrecorded mortgage lien, whose debt was created subsequent to the lien, as is apparent from the following statement in Wicks Bros. v. McConnell, *supra*:

''And while we desire to adhere strictly to the decision and reasoning of the court in the Baldwin case, *supra,* we are not inclined to push the doctrine further than we are required by the language of that opinion in support of secret liens as against creditors whose debts were created, or may reasonably be supposed to have been created, upon the faith of the property being, so far as they could by any possibility discover, unencumbered. If this be not the construction, then the language of the statute ''or against creditors'' is entirely nugatory. There must be some class of creditors to which this language applies. The law gives to the execution or attachment creditor a lien. The law also provides that a mortgage shall not affect him, except from its recording; and equity and good conscience do not require the court to disregard the will of the legislature, and inflict upon creditors whose equity is superior to that of the mortgagee the evils which the statute was designed to restrain.''

From a purely equitable standpoint, without considering the statute, it may be that a subsequent creditor would have a prior equity only where credit was extended upon the faith of the possession of the property, without notice of an unrecorded lien; but, upon consideration of the statute which declares the unrecorded lien ineffective as against creditors, and adhering strictly to the decisions of this court which exclude creditors whose liens were created prior to the creation of the unrecorded lien, we still ''are not inclined to push the doctrine further than we are required by the language of'' the opinion in the Baldwin case and subsequent cases, in favor of a secret

lien, always looked upon with suspicion, and we can see no reason for excluding such creditors as may be included within the plain language of the statute, although they may not have extended credit in the same sense as would be necessary to entitle them to priority upon purely equitable principles. As correctly said in Wicks Bros. v. McConnell, *supra,* such construction would render nugatory the words of the statute, "or against creditors."

In Holt v. Crucible Steel Co. of America, 224 U. S. 262, the Supreme Court of the United States, in construing the term "creditors" as used in section 496, Kentucky Statutes, said:

"Upon that question the decisions of the Court of Appeals of the state have not been uniform, but it is conceded, and it is evident upon an examination of the more recent decisions, that the term does not include antecedent creditors, or subsequent creditors, whose claims are acquired with notice of the unrecorded mortgage, but does include subsequent creditors without notice, who by their diligence, secure a specific lien upon the property, as by execution or attachment, before the mortgage is recorded."

In support of this construction, numerous decisions of this court were cited, and they unquestionably sustain that construction, which we approve and adopt, and which does not require that the subsequent lien creditor shall have extended credit upon faith of the possession of the property subject, as between the parties, to a secret lien, but only that such creditor shall have, by his diligence, secured a specific lien upon the property, as by attachment or execution, before the secret lien is recorded and without notice thereof.

That one, like plaintiff, who has a claim for unliquidated damages is a creditor of one against whom the claim is asserted, was held by this court, in Anglin v. Conley, 114 Ky. 741, and many other cases. See Thomas' Kentucky Words and Phrases, page 127; Caldwell's Kentucky Judicial Dictionary, page 798. The pledge of the altomobile by Elliott to plaintiff to secure the payment of his claim gave to plaintiff a lien upon the automobile, as did also the attachment; and plaintiff, being a subsequent creditor with a lien and without notice of the unrecorded lien, was such a creditor as is contemplated by the statute, against whose lien the unrecorded mortgage was not valid. We, therefore, conclude that the trial court did not err in adjudging to plaintiff a lien upon the automobile superior to that of appellant.

2. The question of the validity of the bond required by the court, before possession of the automobile was given to appellant, is not now before us, since the United States Fidelity and Guaranty Company, the only party executing that bond, was not a party to this action and is not a party to this appeal, and would not, therefore, be bound by any construction that we might now place upon that bond. While the trial court was without authority, summarily and without notice, to render judgment against the company, not a party to the action, the fact that such judgment was rendered, in no way, prejudices appellant; and he cannot raise the question of the validity of either the bond, under which he obtained possession of the automobile, or the judgment against the Guaranty Company, of which it is not complaining and possibly does not know.

3. In adjudging to appellee the amount due upon his lien against the automobile, the court inadvertently adjudged a sum, justified by the evidence, but in excess of that prayed for by plaintiff. This error, which is unquestionably a clerical misprision, cannot be complained of upon appeal unless a motion had been entered in the lower court to correct the error, which was not done here. Civil Code, section 519; U. S. F. & G. Co. v. Boyd, 94 S. W. 35; Bratcher v. Ohio County Bank's Assignee, 152 Ky. 458; Wrenn v. Cooksey, 147 Ky. 825; Binion v. Woolery, 78 S. W. 898; Dersh v. Walker, 89 S. W. 233.

Wherefore, the judgment is affirmed.