## Ward, et al. v. Fisher, et al.

(Decided November 6, 1925.)

## Appeal from Ohio Circuit Court.

1. Compromise and Settlement—Finding that Jack Shipped to Plaintiffs was One they Elected to Take in Compromise of Litigation Held Supported by Evidence.—Evidence held sufficient to support chancellor's finding that jack which defendants shipped to plaintiffs was one they elected to take in exchange for stallion in compromise of litigation arising from defendants' sale of latter to plaintiffs.

2. Appeal and Error—Chancellor's Finding on Conflicting Evidence Not Disturbed.—Where evidence is conflicting, chancellor's finding

will not be disturbed, if mind is left in doubt as to truth on whole case.

A. D. KIRK, CLARENCE BARTLETT and J. S. GLENN for appellants.

BARNES & SMITH for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In the spring of 1920 the appellants and appellees herein compromised some litigation then pending between them growing out of a sale by appellees to appellants doing business as a breeders' association of a stallion and jack. In the compromise it was provided that the appellants, if they should elect so to do, had the right and privilege "of exchanging the Percheron stallion named 'Magician,' now owned by it (the breeders' association), purchased of the said Fisher and Walker with the said Fisher and Walker, without the payment of any additional sum for either a red gray jack about fifteen hands high, blind in one eye and about seven years of age, owned by the said Fisher and Walker, or for one black jack with light points about fifteen hands high and between three and four years old, owned by said Fisher and Walker, at the election of said association, at any time on or before July 1, 1920." The appellants elected to take the black jack mentioned in this compromise. Appellees claim that they then shipped by boat from Evansville, Indiana, where their place of business was, to appellants in Ohio county on the Green river such black jack named "Walker's Tax Payer," but nicknamed "Peanuts."

Appellants admit that if appellees had shipped them this jack, Peanuts, it would have satisfied the compromise, as he was a black jack, superior in all respects. But they claim that no such jack was sent them, but instead a club-footed, crooked-legged, lame, small, short, humped-up, mouse-colored jack of inferior qualities, which, on its receipt, they at once returned to appellees. They then brought this equitable action to set aside the compromise above referred to and also to set aside the sale of the stallion and jack and for damages arising out of alleged breach of warranties in connection with such sale, which latter matters had been settled by that compromise. About the same time, appellees brought separate suits against appellants Randle, Knott and Add-

ington on their respective notes given to appellees in payment of their shares of the purchase price of such stallion and jack. Randle, Knott and Addington's defense to these common-law actions raised the same questions as did the equitable action brought by them and appellant Ward against appellees, and so on motion, the lower court consolidated all four suits and tried them as one equitable action.

The only issue presented in this case, aside from the question of damages, was whether the jack, Peanuts, was shipped by appellees to appellants in settlement of the compromise the parties had made or the inferior jack described by appellants. The chancellor found that the jack, Peanuts, had been shipped, dismissed appellants' suit for rescission and gave appellees judgment for the notes sued on. From this judgment the appellants appeal.

The case is one solely of fact. Appellees, L. S. Walker and Albert Fisher, testify that they shipped the jack, Peanuts, by boat to appellants, but admit they did not load him on the boat. Herbert Walker, a son of appellee Walker, and a man by the name of Rich, who no longer works for appellees, testify that they took Peanuts down to the wharf, but on account of a downpour of rain and the fact that the boat was loading some other freight and could not then take the jack on board, they left him with a man by the name of Bower in a barn hard by to be loaded the next morning. Bower testifies that he knew the jack, Peanuts, very well; that it was Peanuts who was thus left with him by Walker and Rich; and that one of his men loaded him on the boat the next morning consigned to appellants. Bower further testifies that in a few days the boat brought Peanuts back; that he kept him in his barn until the following day, when Rich and Walker came and got him. Walker and Rich testify about getting Peanuts from Bower. On the other hand, the appellants, Ward, Knott and Addington, and their witnesses, Everly and Heflin, testify that the jack which came by boat was an inferior one as above described, and hence could not have been the jack Peanuts. Appellants also introduced a man by the name of Render who, while testifying that the jack which came by boat was a mouse-colored jack, yet on cross-examination, when asked if the jack was not a pretty nice looking jack, replied: "Pretty nice little jack. Q. He looked all right except that he was small boned? A. Yes,

sir.'' It also appears that after the jack which was shipped had been returned by appellants to appellees within a few days after its arrival, the appellant Ward, who was the managing agent of the breeders' association above referred to, paid in full some outstanding notes he owed to appellees on the stallion-jack deal first mentioned herein and without any claim for credit or off-set on account of the alleged inferior jack tendered in settlement of the compromise of the dispute over the stallion.

It is perfectly apparent that the testimony is in hope-less conflict. If appellees' witnesses are to be believed, appellees undoubtedly shipped the jack, Peanuts, to ap-pellants and so satisfied the compromise. If appellants' witnesses are to be believed, the converse is true.

The chancellor found for appellees, and it is the rule that where the evidence is conflicting, as here, the chan-cellor's finding will not be disturbed, if, on the whole case, the mind is left in doubt as to the truth. Hayes v. Hayes' Exor., 181 Ky. 589, 205 S. W. 596; McGoodwin v. Shelby, 182 Ky. 377, 206 S. W. 625; Bacon v. Dabney, 183 Ky. 193, 208 S. W. 807; Jewell v. Cecil, 177 Ky. 822, 198 S. W. 199; Tutt v. Smith, 184 Ky. 732, 212 S. W. 920.

The judgment of the lower court is, therefore, af-firmed.