DOLLE v. CASSELL et al.

YORK MFG. CO. v. SAME.

(Circuit Court of Appeals, Sixth Circuit. January 26, 1905.)

Nos. 1,352, 1,353.

BANKRUPTCY—CONDITIONAL SALES—VALIDITY OF LIEN UNDER OHIO STATUTE.
Under Rev. St. Ohio, § 4155–2, which provides that conditional sales of chattels, under which delivery has been made, shall be void, unless recorded, as against "all subsequent purchasers and mortgagees in good faith and creditors," as such provision is to be construed under the rules of decision laid down in analogous cases by the Supreme Court of the state, a reservation of title in such a contract which had not been filed at the time of the bankruptcy of the purchaser is void, as against his creditors, whether their claims arose before or after the contract was made.

Appeals from the District Court of the United States for the Southern District of Ohio.

Louis J. Dolle and Constant Southworth, for appellants Louis J. Dolle and the York Mfg. Co.

Waight & Moore, for Waight and Ames.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. These appeals were taken—the first by the assignee of a creditor, the second by a mortgagee of the bankrupt, the Mt. Vernon Ice, Coal & Milling Company—from an order made by the District Court on June 8, 1904, declaring the rights of the creditors and of the mortgagee, and directing the distribution of the assets. The subject-matter of these several appeals are so interrelated that it is expedient to consider them together.

The Mt. Vernon Ice, Coal & Milling Company is a corporation organized under the laws of Ohio and had engaged in business at Mt. Vernon, in that state. Desiring to secure some icemaking machinery, it entered into a written contract with the appellant the York Manufacturing Company for a supply. This contract was concluded Octo-

ber 27, 1902, and provided that the vendor should supply the machinery and set it up in readiness for operation in the plant of the Mt. Vernon Ice, Coal & Milling Company for the sum of $7,375, to be paid in installments. There was in the contract this stipulation:

"It is further expressly agreed that the title to and ownership of the machinery, apparatus or plant herein contracted for shall remain in the York Manufacturing Company until the entire purchase price agreed to be paid, * * * shall be actually paid in cash."

And there was given the right to the vendor to enter the premises of the vendee and remove the property in case of default. Twenty-five per cent. only of the price of the machinery was ever paid. It was part of the stipulation of the contract that the vendee was to erect the building and make it ready for the reception of the machinery. This contract was never filed as required by the statute of Ohio relating to conditional sales, hereinafter referred to. Four persons named, William Mild, William E. Mild, Charles L. Mild, and Elizabeth Klinkel, were the principal stockholders of the Mt. Vernon Ice, Coal & Milling Company. The company was short of funds wherewith to progress in its operations. It had bought a lot on which it was erecting its building or buildings, and given back to its grantor a mortgage thereon for $1,000 of the purchase money. The title to this lot then stood in the name of William Mild. In order to secure means to carry on the business of the company, the Milds applied to Waight and Ames—the former being a stockholder—to assist in raising money by lending their credit as sureties on notes to be given for loans. Thereupon the following agreement was made:

"This agreement, made and concluded this 1st day of November, A. D. 1902, by and between J. B. Waight and Ben Ames, parties of the first part, and The Mount Vernon Ice, Coal & Milling Company, William Mild, William E. Mild, Charles L. Mild and Elizabeth Klinkel, parties of the second part, witnesseth that,

"Whereas, the said The Mount Vernon Ice, Coal & Milling Company, William Mild, William E. Mild, Charles L. Mild, as stockholders thereof, are engaged in the business of conducting a flouring mill and are erecting an artificial ice and cold storage plant in Mount Vernon, Ohio, and expect to conduct the business of a flouring mill, the manufacture and sale of artificial ice, and a cold storage plant, and,

"Whereas, said parties have already invested therein about $12,000.00, and it will be required and become necessary to complete said artificial ice and cold storage plant, to obtain a line of credit for about the sum of $10,000.00, and they are desirous of borrowing said sum, or as much thereof as may be necessary to complete said plant.

"Now, therefore, said first parties, J. B. Waight and Ben Ames, agree to sign as security for said The Mount Vernon Ice, Coal & Milling Company to such persons or banks as loans may or can be made from, for said company for sums not to exceed $10,000.00 in the aggregate, and continue as such security and carry said loan for a period of not to exceed two (2) years, upon the following terms:

"First. Said William Mild, William E. Mild and Charles L. Mild are to satisfy said first parties that they have already invested the sum of $12,000.00 in said business, and that said business is free from indebtedness.

"Second. Said second parties are to elect said first parties directors of said The Mount Vernon Ice, Coal & Milling Company, they two with two of said Milds to constitute the board of directors of said company, and place their stock in said company in the hands of a trustee to be voted by said trustee for the re-election of said first parties as directors of said company for and

until all the loans upon which first parties are security, are paid and satisfied in full.

"Third. First parties are to be given a first lien upon all the property, both real and personal, of said The Mount Vernon Ice, Coal & Milling Company as security to indemnify them from any and all liability incurred by them on account of their becoming security for said company, or stockholders therein.

"Fourth. In the event of the property of the said The Mount Vernon Ice, Coal & Milling Company, not being sufficient to pay any and all of the indebtedness, upon which said first parties have become liable as security therefor under this agreement, then Elizabeth Klinkel, one of second parties to this agreement, agrees that she will pay any of said liabilities that said property of said The Ice, Coal & Milling Company is not sufficient to pay, and save and protect said first parties from any liability by reason of becoming security as aforesaid for said The Mount Vernon Ice, Coal & Milling Company.

"Fifth. William Mild, William E. Mild and Charles L. Mild agree that they will give their services to the work of said The Mount Vernon Ice, Coal & Milling Company until any and all liabilities upon which said first parties have, or may hereafter become security for said The Mount Vernon Ice, Coal & Milling Company shall be paid and charged in full, or said first parties released therefrom, and that they will not make a charge against said The Mount Vernon Ice, Coal & Milling Company for said work, or draw therefrom to exceed $15.00 per week, each, for said services until they and all loans upon which first parties are liable, are paid in full.

"Sixth. Said second parties agree to pay said first parties as a consideration for becoming security for them as aforesaid, in addition to paying the interest upon said loans, the sum of $1,500.00.

"Seventh. It is understood and agreed that for and during the time said first parties are liable as security for The Mount Vernon Ice, Coal & Milling Company, upon any of said obligations, they are to have control of said company and the services of William Mild, William E. Mild and Charles L. Mild therein, and upon the payment of said loans, and a release and discharge of first parties from any and all of said liabilities, then said first parties agree to turn over to said The Mount Vernon Ice, Coal & Milling Company and said Milds, all control of said property and all rights or interest that they may have therein.

"In witness whereof, the parties have hereunto set their hands and seals the day and year above set forth.        William Mild.
                                                          "William E. Mild.
                                                          "Charles L. Mild.
                                                          "Elizabeth Klinkel."

A mortgage without date was made on the same day, November 1, 1902, by William Mild, on the lot above mentioned, to Waight and Ames, conditioned for their indemnification for becoming sureties as contemplated by their agreement. This mortgage was not recorded until July 16, 1903, on which day the Mt. Vernon Ice, Coal & Milling Company made a general assignment for the benefit of its creditors. After giving the mortgage just mentioned, but on the same day, William Mild executed a deed of the lot, intending to convey it to the company, but, as is said, by mistake, the names of Waight and Ames were inserted as grantees. In their petition they offer to surrender to the bankrupt all claims under this deed. The deed was never recorded.

At the date of the agreement, November 1, 1902, no part of the machinery had come to the possession of the ice, coal, and milling company; but it began to arrive in January, and was finally installed in the plant two or three months later.

After the agreement above set forth, of Waight and Ames, five notes were made and used, amounting in all to $10,000. Some were signed

by the bankrupt and Waight and Ames; others were signed by the Milds and by Waight and Ames, and not by the bankrupt. Waight and Ames paid one of the notes not signed by the bankrupt, given for $1,000, about February 1, 1903. The rest remain unpaid. On July 22, 1903, a petition by creditors for an adjudication of bankruptcy was filed against the Mt. Vernon Ice, Coal & Milling Company, and on December 11, 1903, the adjudication was made. The claims proved amount to $37,000. The property of the bankrupt has been sold, and realized $5,100. Soon after the adjudication of bankruptcy, the York Manufacturing Company filed an intervening petition, setting forth the terms on which they sold the machinery to the bankrupt, alleging the default in payment, and praying that they might be allowed to enter the premises and remove the machinery therefrom. This petition was resisted by the creditors. A little later Waight and Ames filed their intervening petition, setting up their mortgage, alleging that they had no knowledge of the contract with the York Manufacturing Company at the time of taking their mortgage, and praying that they be given precedence over the York Manufacturing Company.

Section 4155-2, Rev. St. Ohio, provides as follows:

"In all cases where any personal property shall be sold to any person, to be paid for in whole or in part in installments, or shall be leased, rented, hired or delivered to another on condition that the same shall belong to the person purchasing, leasing, renting, hiring, or receiving the same whenever the amount paid shall be a certain sum, or the value of such property, the title to the same to remain in the vendor, lessor, renter, hirer or deliverer of the same, until such sum or the value of such property or any part thereof shall have been paid, such condition, in regard to the title so remaining until such payment, shall be void as to all subsequent purchasers and mortgagees in good faith, and creditors, unless such condition shall be evidenced by writing, signed by the purchaser, lessee, renter, hirer or receiver of the same and also a statement thereon, under oath, made by the person so selling, leasing or delivering any property as herein provided, his agent or attorney, of the amount of the claim, or a true copy thereof, with an affidavit that the same is a copy, deposited with the clerk of the township where the person signing the instrument resides at the time of the execution thereof, if a resident of the state, and if not such resident, then with the clerk of the township in which such property is sold, leased, rented, hired or delivered is situated at the time of the execution of the instrument; but when the person executing the instrument is a resident of a township in which the office of county recorder is kept, or when he is a non-resident of the state, and the property is within such township, the instrument shall be filed with the county recorder; and the officer receiving any such instrument shall proceed with the same in all respects as he is required to do by section four thousand one hundred and fifty-two of the Revised Statutes of Ohio, and shall receive the same fees as are allowed by law for similar services in other cases."

The referee held that the mortgage of Waight and Ames was a valid lien on all the bankrupt's property, including the machinery furnished by the York Manufacturing Company, subject to the mortgage on the lot for $1,000 purchase money, and that the York Manufacturing Company had no lien on the machinery, but was a general creditor only. On petition for review, the District Court reversed this ruling, and held that the mortgage of Waight and Ames did not cover the machinery supplied by the York Manufacturing Company, but that the latter company had no lien thereon as against general creditors; that the mortgage of Waight and Ames was a valid lien on the rest of the property,

subject to the purchase-money mortgage on the lot; that Waight and Ames were not creditors, except as to the $1,500 for becoming sureties, but that they might prove the debts of the creditors who held the notes on which they were sureties, if those creditors failed to do so, and be subrogated to the rights of said creditors to the extent that they have paid or may pay any balance due on said notes after applying the surplus of the proceeds of the real estate after the purchase-money mortgage had been paid; and that "the entire $10,000 of the notes secured by said Waight and Ames is included in this right."

The District Court held that the mortgage of Waight and Ames was subordinate to the lien of the York Manufacturing Company on the machinery, upon the ground that no part of it had been placed upon the grounds of the bankrupt until two months after the making of the mortgage to Waight and Ames. And Waight and Ames have not appealed. But as above stated, the court granted them leave to prove the claims of the holders of the obligations on which they were sureties, provided the holders did not themselves prove them, and this right of subrogation was extended in respect to the whole $10,000. But this gave the right to prove such claims only as belonged to those creditors and were provable by them, and not any claim of Waight and Ames. One note, representing $1,000, had been paid five months or more before the bankruptcy proceedings, and could not, therefore, be proved as a claim of the holders of the notes, though it might be established as a general claim by Waight and Ames.

Under the provisions of section 4155–2, Rev. St. Ohio, above set forth, the agreement for the retention of the title of the machinery sold by the York Manufacturing Company until payment of the purchase price was void as to creditors, unless filed as there required. The contract was never filed, and that property, together with the other property of the bankrupt, has been seized by the court in bankruptcy. The question arising on the intervening petition of the York Manufacturing Company is whether the petitioner is entitled to recover the machinery sold to the bankrupt, or its proceeds, by virtue of the reservation contained in the contract of sale. In the case entitled In re F. B. Shuster Co., 134 Fed. 43, which came here from the Western District of Kentucky we held that, under the settled law of Kentucky, such an unfiled contract for a conditional sale was valid between the parties, and as against subsequent mortgagees or purchasers with notice, and as against creditors, except those who became creditors subsequent to the unfiled contract, and without notice thereof. And we further held that, subject to the satisfaction of the claims of such subsequent creditors, the vendor in the contract of sale was entitled to enforce in the bankruptcy court the lien reserved. Contrary to the construction given to the Kentucky Statute in respect to the filing of such instruments, the Supreme Court of Ohio apparently holds that, under the statute of that state relating to the filing of chattel mortgages, an unfiled mortgage is void as to all creditors, whether prior or subsequent, without regard to notice, who secure a lien upon the property before the mortgage is filed. Bloom v. Noggle, 4 Ohio St. 45; Building Association v. Clark, 43 Ohio St. 427, 2 N. E. 846; Hanes v. Tiffany, 25 Ohio St. 549; Kilbourne v. Fay, 29 Ohio St. 264,

23 Am. Rep. 741; Bercaw v. Cockerill, 20 Ohio St. 163. While we do not find that the statute of Ohio requiring the filing of contracts of conditional sales of chattels has been construed by the Supreme Court of the state, we have no reason for supposing that "creditors" under the latter statute are not the same as the persons described by that term as the persons against whom such instruments are void in the statute relating to unfiled chattel mortgages.

In the case entitled In re Shirley, 112 Fed. 301, 50 C. C. A. 252, which came here from Ohio, we had occasion to consider its chattel-mortgage statute, and the decisions of the Supreme Court of the state concerning its construction; and, with reference to the word "creditors," we were led to the conclusion stated by Judge Day in the opinion of the court as follows:

"While this term is used without limitation in the statute as construed by the Ohio Supreme Court, it means such creditors as have fastened upon the property before the filing of the mortgage. All other creditors must assail the security for fraud, in order to defeat the preference. The cases cited holding a contrary doctrine are from states with different statutes, or where the Supreme Court has given a different construction to a similar statute."

But in the case we now have before us, the conditional contract of sale had not been filed when the vendor was adjudicated a bankrupt, and the question now is whether the reservation in the unfiled conditional sale is valid as against the trustee who now represents the creditors. The Supreme Court of Ohio construes the statutory provision regarding unfiled mortgages, so far as relates to creditors, to extend its protection to the antecedent creditors of the mortgagor, and not to those only who became such while the mortgage remained unfiled. And that court further holds that creditors do not lose the right to have recourse to the property covered by an unfiled mortgage by the conveyance of such property by the mortgagor to a trustee for the benefit of creditors, but that such right may be asserted and worked out while the property is in the hands of the trustee; likening the assignment upon a trust to appropriate the property to the claims of creditors to a judicial seizure for that purpose. Hanes v. Tiffany, 25 Ohio St. 549. And in a later case it was held that where the mortgagor of an unfiled mortgage dies, and his estate comes under the jurisdiction of the probate court, the creditors may in that court claim the privilege given them by the statute, and that the executor was bound to protect their rights against the mortgagee. Kilbourne v. Fay, 29 Ohio St. 264, 23 Am. Rep. 741. This holding is in accord with our own decision in the case of F. B. Shuster, supra, for the status of the property of a deceased person is in this respect quite similar to that of the estate of a bankrupt in the possession of the court for administration. Inasmuch as the seizure of the court of bankruptcy operates as an attachment, and an injunction for the benefit of all persons having interests in the bankrupt's estate, as said in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, and by this court in the F. B. Shuster Co. Case, we see no reason why the creditors of this bankrupt's estate should not be allowed the privilege which they had against the right claimed under the reservation in the conditional sale of the York Manufacturing Company.

The machinery and real estate have been separately sold. The real estate, sold, as we suppose, subject to the purchase-money mortgage, brought only $50, and the machinery $5,050; but the proceeds stand in the same plight as did the property prior to the sale, so far as the rights of parties are concerned. The court and the parties have treated the machinery as severable, and not as fixtures of the realty. We shall act upon the presumption that this was its character.

There are several minor questions discussed in the brief of counsel, which we do not think it necessary to consider. Waight and Ames not having appealed, the conclusions we have expressed lead to the same result as that effected by the order of the lower court, which must therefore be affirmed. The costs of this court will be paid by the appellants.