In re DORAN.

(District Court, W. D. Kentucky, November 10, 1906.)

1. BANKRUPTCY—LIENS—UNRECORDED MORTGAGE.

Under Ky. St. 1903, § 496, which provides that no mortgage shall be valid against creditors until it shall be acknowledged or proven according to law and lodged for record, as construed by the courts of the state, a mortgage which was withheld from record for several months, and until shortly before the bankruptcy of the mortgagor, is not a lien as against his creditors in bankruptcy whose claims originated while it was so withheld.

2. SAME—TRUSTEE—REPRESENTATIVE CAPACITY.

While in respect to an adverse claimant of property a trustee in bankruptcy stands in the place of the bankrupt and with the same rights and no more, in a contest with a creditor who claims a lien or a right of priority the trustee represents the body of unsecured creditors, and not the bankrupt, and may assert their rights which are not necessarily limited to those of the bankrupt.

In Bankruptcy. On review of decision of referee.

L. A. Faurest, for petitioner.
Claude Mercer, for trustee.

EVANS, District Judge. The adjudication in this proceeding was made May 18, 1906. C. H. Moorman had held sundry unrecorded mortgages on portions of the bankrupt's property since January, 1902. The one now in question was dated January 9, 1905, and had been acknowledged January 20, 1905, but fortunately or unfortunately was not put to record until March 13, 1906. It was made to secure a note for $714.61, which seems to have been a renewal of previous notes for the same debt, also secured by previous unrecorded mortgages. Moorman made proof of his claim as a secured debt, but the referee only allowed it as an unsecured demand, and it is this ruling which is sought to be reviewed. Technically this might possibly have been erroneous to some extent, because, if any of the bankrupt's debts had been created after the mortgage was recorded, it would have been good as to such subsequent creditors; but as the referee found the fact to be, and pointed it out in his opinion, there were no such debts created. The mortgage was not, as we shall see, any security entitling Moorman to priority as against debts created while he voluntarily kept that instrument secret, viz., from January 9, 1905, to March 13, 1906, and the debts thus created would more than exhaust the assets. Hence the error of the referee, if any, was abstract, and in no way prejudicial to the mortgagee, if otherwise the referee's ruling was substantially correct.

Under the provisions of section 64 of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], among the "debts which have priority" are (clause b [5]) those "owing to any person who by the laws of the states or of the United States is entitled to priority." It is therefore essential to ascertain whether Moorman, holding an unrecorded mortgage, is, as against creditors whose debts were created in the meantime, entitled to priority of payment out of the property embraced in the mortgage or its proceeds. The Kentucky statute must furnish the test. This is expressly demanded by the clause in the bankruptcy act just quoted, so that upon that statute alone, and its proper construction, the decision of the pending question must turn. The applicable Kentucky statute (1903) is in this language:

"Sec. 496. No deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deeds shall be acknowledged or proved according to law, and lodged for record."

In the case of In re Ducker (D. C.) 133 Fed. 771, precisely the same issues were involved, and in that case we very carefully considered the question of the proper construction of the section of the Kentucky Statutes just copied, and reached a conclusion which justified the referee in holding that Moorman's mortgage did not entitle him to any priority of payment over any of the bankrupt's creditors whose claims were created after the mortgage was made but before it was placed on record. As an interpretation of the law of Kentucky, we do not doubt the accuracy of the views expressed in the opinion referred to, nor need we repeat what was there said. Especially is this so now, because the conclusion we then reached, when reviewed by the Circuit Court of Appeals, was fully approved; its elaborate opinion thereon being reported in 134 Fed. 43, 67 C. C. A. 117. We are not at all at liberty, therefore, even if so disposed (which we are not) to change the ruling as to the proper construction of the statute of Kentucky, since that construction is now that of the higher court.

It is vigorously insisted, however, that, while the ruling on the Shuster claim in the Ducker Case was proper upon the facts there presented, as the mortgage there was never recorded at all, yet that the case now before us must be ruled by that of York Mfg. Co. v. Cassell, 201 U. S. 450, 26 Sup. Ct. 481, 50 L. Ed. 782. In that case there was a contest between a seller of property upon condition and the trustee of the bankrupt as to whether the former could remove the property. The condition had been that the title was not to pass until the price was paid. The price had not been paid, and there was an Ohio statute applicable to such cases which had been given a construction by the courts of that state. Accepting, as it must, the construction thus put upon the Ohio statute, the Supreme Court held that as the trustee in the state of case then presented stood in the plight and condition of the bankrupt, and as the contract as between the latter and the conditional seller was good, whether recorded or not, it was also good as between the seller and the trustee, who pro hac vice stood in the shoes

of the bankrupt, who alone was claiming, and that under the construction given the Ohio statute the seller, as between him and the trustee, was entitled to take the property which had not been paid for; that is to say, as the bankrupt himself could not dispute the contract, neither could the trustee, who stood in his place. But here the rights of the parties to this contest are the rights of innocent creditors which depend upon Kentucky law, and we must distribute the estate, in great measure, as required by the law of that state. This, as we have seen, is demanded by the express provision of the bankruptcy act, and we think the Kentucky law, properly construed, substantially supports the ruling of the referee; there being no dispute that the net assets of the bankrupt will not exceed $1,000, while the debts proved amount to about $2,550, of which $1,745.66 were created between the date of Moorman's last mortgage, viz., January 9, 1905, and the time when it was put to record, viz., March 13, 1906, and $800 of which was created previous to January 9, 1905. Certainly much the larger part of the indebtedness was created while the bankrupt apparently had the unincumbered ownership of all the property covered by a mortgage which the mortgagee kept carefully concealed, thus giving the bankrupt a credit which would be fictitious if the priority of that mortgage is upheld.

Under these circumstances, we are of opinion that a proper construction of the Kentucky law defeats his right to any preference or priority in payment out of the $1,000 which constitute the assets of the bankrupt, even though, as appears to be the case, a large portion thereof came from a sale of the mortgaged property. We think the proper construction of the law of Kentucky demands that, as he deliberately withheld his mortgage from the record, he thereby forfeited, in favor, at least, of the creditors whose claims were created while he did so, all right to priority over them; they having extended credit presumably upon the bankrupt's apparent ownership of the property. Certainly under these circumstances it is equitable for him to suffer the loss, rather than those who were without fault.

Nor do we think there is anything in York Mfg. Co. v. Cassell to require a different ruling. As already pointed out, the rights of the parties in that case depended upon a statute of Ohio which the courts of that state had construed, and it is easily and fairly distinguishable from the one before us. Moreover, the question there involved was between two claimants to certain specific property; one the seller upon condition unfulfilled, and the other the trustee, who, as to the ownership thereof, stood in the shoes of the bankrupt. The Supreme Court, following the established construction in Ohio of a statute of that state, upheld the title of the seller. In Kentucky, however, the rule of construction, in respect to such conditional sales as that in the case then before the Supreme Court, is exactly the reverse of the rule in Ohio. In the opinion in the Ducker Case (D. C.) 133 Fed. at page 771, it was said:

"The T. B. Shuster Company, of New Haven, Conn., having made a conditional sale (as it supposed) to the bankrupt of certain merchandise which it delivered to him in Louisville, Ky., the parties entered into a written agree-

ment by which it was stipulated between them that the title to the merchandise should remain in the seller until the purchase price was paid, and power was given to it to retake possession of the property and remove it if it was not paid. This being precisely such an agreement as the settled law of Kentucky makes an absolute sale, with a mortgage back to secure the purchase money (Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146; Welch v. Cash Register, 103 Ky. 30, 44 S. W. 124, and cases cited), the Shuster Company has proved its claim as a secured debt."

The Circuit Court of Appeals approved this view (134 Fed. 46, 67 C. C. A. 117) in that case, which depended upon the laws of Kentucky, because it was conformable to the settled law of that state, while for a similar reason the Supreme Court followed the opposite rule in a case which depended upon the settled law of Ohio.

In the case before us there is a contest among creditors, who do not stand in the plight of the bankrupt at all, as to their respective rights in the distribution of the bankrupt's assets, and it is the right and the duty of the trustee, who here represents all the creditors, to see that the law is enforced. He is not now the substitute of the bankrupt, and standing as he alone would stand, as in the York Mfg. Co. Case, but it is his duty to stand for the unsecured creditors so that there may be a lawful distribution of the assets in his hands.

In its opinion in Atkins v. Wilcox, 105 Fed. 597, 44 C. C. A. 626, 53 L. R. A. 118, the Circuit Court of Appeals for the Fifth Circuit said:

"By the clearest implication he represents all the creditors, and as such representative has an interest in the just administration of the estate which belongs to the creditors. Moreover, this right is expressly recognized in the sixth paragraph of general order in bankruptcy 21 (32 C. C. A. xxii., 89 Fed. ix.), which has itself the force of a statute, even if not clearly founded on the text of the statute, which we think it is. It appears to give the trustee precedence even of the creditors, for the language is that: 'When the trustee or any creditor shall desire the re-examination of any claim filed against the bankrupt's estate, he may,' etc."

See, also, Loveland on Bankruptcy, § 139, and Brandenburg on Bankruptcy, § 869.

So we conclude that the objections of the trustee here, to the allowance of Moorman's claim as a secured debt as against the creditors whose demands had been created while the mortgage was kept secret, properly raised a controversy among the creditors as to the manner of distributing the bankrupt's assets, and that on the merits the objections to the proof of the debt as a secured claim against the general creditors should be sustained. As against those creditors Moorman's mortgage gives no right of priority in payment, because it was not recorded until after they were created, and, as those claims would, as against his mortgage, exhaust the assets, he was not prejudiced by the ruling complained of. Of course, the referee's order does not give any preference in the distribution to any of the debts, and Moorman will get his distributive share along with all the others. He is excluded from priority, but not from participation.

These conclusions seem also to be supported by the provisions of section 64a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), which is in this language:

"Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate."

Clause "d" of the same section also shows the stress laid upon the duty of recording a mortgage if such recording was necessary "in order to impart notice."

Of course, if the proceeds of the mortgaged property had been more than sufficient to pay the debts created while the mortgage was in hiding, viz., those created between the execution and when it was recorded on March 13, 1906, then it might be important to inquire whether Moorman would not be entitled to the surplus as against creditors whose claims arose before January 9, 1905. We think Moorman, in that contingency, would be so entitled, and, if upon the return of the case such a surplus should by any possibility develop, the referee should readjust his rulings to that state of case; but, as the papers sent up appear to show that such a surplus is impossible, the question would now be altogether speculative, and the equity of the case as now presented evidently demands that all the general creditors, including Moorman, should share pro rata. To attempt any other course would be to attempt the impracticable.

The ruling sought to be reviewed is affirmed, and the petition for a review is dismissed. In further proceedings in the case the referee will follow the equitable principles established in the Ducker Case, referred to, as well as what is expressed in this opinion.