## In re FROST.

(District Court, E. D. Kentucky.   May 13, 1925.)

**1. Statutes  ☞230—Amendment  considered with reference to statute as construed before amendment.**

In determining effect of 1916 amendment of Ky. St. § 496 (Laws 1916, c. 41), merely adding a sentence, it must be considered in light of prior construction, by court of last resort, of the statute before amendment.

**2. Courts  ☞370 — District Court not bound by construction of state statute by Circuit Court of Appeals conflicting with later state court construction.**

District court is not bound by construction of state statute by Circuit Court of Appeals, where in conflict with later construction by the court of last resort of the state.

**3. Bankruptcy  ☞184(2) — Kentucky statute held not to protect against unrecorded mortgage prior creditors who had not secured some equity or subsequent creditors with notice.**

Ky. St. § 496, as amended by Laws 1916, c. 41, held not to protect against unrecorded chattel mortgage, general creditors represented by trustee in bankruptcy of mortgagor; they being either prior creditors, who had not secured some equity, or subsequent creditors with notice.

**4. Bankruptcy  ☞444—Petition for review held filed in time in view of exceptional state of case.**

Petition of trustee for review of referee's order was filed in time, being filed as soon as trustee became aware of the reversal of the decision followed by the referee, which then was the only authority on the question involved.

In Bankruptcy. In the matter of Stanley Frost, doing business as the Lexington Overland Company, bankrupt. On petition of trustee for review of order of the referee. Order affirmed.

Thompson & Thompson, of Lexington, Ky., for trustee.

Chester D. Adams, of Lexington, Ky., for Ohio Savings Bank & Trust Co.

Hunt, Northcutt & Bush, of Lexington, Ky., for bankrupt.

ANDREW M. J. COCHRAN, District Judge. This cause is before me on petition for review filed by the trustee, complaining of an order of the referee adjudging that the Ohio Savings Bank & Trust Company has a lien for $1,987.87 on the proceeds of three automobiles, by virtue of an unrecorded mortgage which is held thereon, as against creditors whose debts were created antecedent to the execution thereof, and those whose debts were created subsequent thereto, but with notice of the existence of such mortgage. As to subsequent creditors without notice, the adjudication was that they had the prior claim.

Question is made as to whether the petition for review was filed in time. This is passed for the time being.

The main question depends upon the proper construction of section 496, Kentucky Statutes. And, in order to a proper construction thereof, it is essential that an understanding first be had as to what was its meaning as it stood before the amendment of 1916 (Laws 1916, c. 41), and that as adjudged by the Court of Appeals of Kentucky. The section, as it stood before that amendment, was in these words: "No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deeds shall be acknowledged or proved according to law, and lodged for record." That amendment made no change in this phraseology. It simply added this sentence, to wit: "The word 'creditors' as used therein shall include all creditors irrespective of whether or not they have acquired a lien by legal or equitable proceedings or by voluntary conveyance."

The meaning of the statute, as it originally stood, was definitely settled by the decision of that court in the case of Wicks v. McConnell, 102 Ky. 434, 43 S. W. 205. Prior thereto there was great confusion in the decisions as to the true meaning thereof, and, after its rendition and before that amendment, the matter was not always put clearly and accurately. The original statute, i. e., the statute as it was before that amendment, substantially dates from 1785. The decisions dealing with it before Wicks v. McConnell are eight in number. They are those in the following cases, to wit: Helm v. Logan's Heirs, 4 Bibb (Ky.) 78; Campbell v. Mose-

9 F.(2d)—9

by, Litt. Sel. Cas. (Ky.) 359; Graham v. Samuel, 1 Dana (Ky.) 166; Morton v. Robards, 4 Dana (Ky.) 258; Halley v. Oldham, 5 B. Mon. (Ky.) 235, 41 Am. Dec. 262; Righter v. Forrester, 1 Bush (Ky.) 281; Low v. Blinco, 10 Bush (Ky.) 331; Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146.

One cannot duly appreciate Wicks v. McConnell and its construction of that statute without first making a critical survey of those eight decisions. This has never been attempted but once, and that by myself in the case of In re Watson (D. C.) 201 F. 962, 972.

If one will have the patience to read what is there said, he will be in position to determine whether that survey is sound, and, if not, wherein it is lacking. It is the easiest approach to such a survey by any one who cares to make it. It appears therefrom that prior to Wicks v. McConnell the words "or against creditors" in the statute had practically been eliminated therefrom. Just how that came about is therein set forth. What Wicks v. McConnell did was to restore these words to the statute and construe their meaning. It was held that the word "creditors" did not include all the creditors of the grantor. It did not include creditors whose debts were created before the execution of the unrecorded instrument. It only included those whose debts were created subsequent thereto. Nor did it include all such creditors. It did not include those who had actual notice of the existence of such instrument at the time of the creation of their debts. It only included those who did not have such notice at that time. Nor did it include all such creditors. It did not include those who had not prior to the recordation of the instrument acquired by their own activity a hold or lien on the property covered thereby. It only included those who had prior thereto acquired such hold or lien. The words of the statute were "or against creditors." As thus construed, the statute was the same as if it had, in so many words, said, "Or against subsequent creditors without notice, who have by their own activity acquired a hold or lien on the property." The statute itself contained a hint of this construction, though it seems to have been reached from general considerations and not from such hint. I referred to this hint in the Watson Case, p. 990, in these words: "And the statute itself is not without an indication that such is its true construction. It includes two classes of persons—purchasers for a valuable consideration without notice and creditors. Though it is not so

expressed, the purchasers included are subsequent purchasers. It is expressly required that they be without notice. A purchaser has a hold on the property purchased, and he has acquired it by his own activity. In connection with this class of persons then we find the four qualifications, subsequent, without notice, having a hold on the property, and that acquired by their own activity. Placed in the same category with them is another class of persons, to wit, creditors. Applying the maxim, 'Noscitur a sociis,' is it not to be taken that the creditors called for are not the creditors generally, but subsequent, without notice, and who have acquired a hold on the property by their own activity?"

The requirements that the creditors who were to be entitled to precedence over the unrecorded instrument should be creditors whose debts were created after the execution of the instrument, and that they should not have had actual notice of the existence thereof at the time of its execution, were equitable in their nature. It was not right that subsequent creditors without notice should give way to such an instrument. In granting credit they had the right to rely on the showing made by the records as to the debtor's financial condition. Antecedent creditors and subsequent creditors with notice had no such equity. The other requirement, to wit, that the subsequent creditor without notice should have acquired by his own activity a hold or lien on the property, was not equitable in its nature. It was merely essential in order that the creditor might be in position to assert his equity growing out of his being a subsequent creditor without notice. Until then he was not in position to be heard as to priority of rights in and to the property. In order to this, however, it may be said that it was unimportant whether he had acquired the hold or lien by his own activity or that he had so acquired it before recordation, and, possibly, in view of this the requirement was unduly narrowed. Possibly also it should not be treated as an element in the construction of the word "creditors" in the statute. It should be construed as meaning "subsequent creditors without notice." In this case the requirement as to acquiring such hold or lien arises from the necessity of such creditor being in position to assert his rights.

I have heretofore had something to do with this statute; this, however, before the amendment of 1916. It first came before me in the case of In re Sewell (D. C.) 111 F. 791. I upheld, in that case, the unrecorded instrument as against the trustee in bankruptcy. Whilst I did not in my opinion make a critical survey of the decisions of the Kentucky Court of Appeals, I referred to them, and based the ruling on the decision in Wicks v. McConnell. The question as to priority between the holder of the unrecorded instrument and the trustee in bankruptcy arose shortly afterwards before Judge Evans in the case of In re Ducker (D. C.) 133 F. 771. He took the opposite position, to wit, that the trustee had the prior right. On appeal his judgment was affirmed.

In re Ducker, 134 F. 43, 67 C. C. A. 117: The appellate court held that Judge Evans was right and that I was wrong. Subsequently a case came before that court from Ohio, whose statute is substantially similar to the Kentucky statute. It adhered to its opinion in the Ducker Case.

Dolle v. Cassell, 135 F. 52, 67 C. C. A. 526: This was carried to the Supreme Court of the United States, and that court reversed the judgment of the appellate court.

York Mfg. Co. v. Cassell, 201 U. S. 344, 26 S. Ct. 481, 50 L. Ed. 782. This, in effect, upheld my position taken in the Sewell Case. Subsequently another case involving the same question arose before Judge Evans. The decision in the case of York v. Cassell was urged upon him as overthrowing the Ducker Case. He did not so think, placing his decision on the ground that the Ohio statute differed from the Kentucky statute.

In re Doran (D. C.) 148 F. 327: The appellate court on appeal reversed his judgment.

In re Doran, 154 F. 467, 83 C. C. A. 265: Yet another case arose before Judge Evans, and he adhered to his position in the Doran Case. The judgment in this case was reversed by the appellate court.

Crucible Steel Co. v. Holt, 174 F. 127, 98 C. C. A. 101: The judgment of the appellate court was carried to the Supreme Court and affirmed by it.

Holt v. Crucible Steel Co., 224 U. S. 262, 32 S. Ct. 414, 56 L. Ed. 756: The Supreme Court based its decision on that of the Kentucky Court of Appeals in the case of Wicks v. McConnell. It dealt with some later decisions calculated to create confusion, and showed that they to no extent impaired or qualified the holding in Wicks v. McConnell. Thus it came about that my position in the Sewell Case was upheld by the appellate court in Re Doran, supra, and Crucible Steel Co. v. Holt, supra, and the Supreme Court in York v. Cassell, supra, and Holt v. Crucible Steel Co., supra, though no mention

was made in any of the opinions in any of these cases to my decision in that case.

The next case which came before me was that of In re Kreuger (D. C.) 199 F. 367. It arose after the amendment of June 25, 1910, to section 47a(2) of the Bankrupt Act (Comp. St. § 9631), whereby it was provided that the trustee "as to all property in the custody or coming into the custody of the bankruptcy court shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon." I held that, by virtue of this amendment, the rule laid down in the Sewell Case was changed. The trustee in bankruptcy by virtue thereof acquired the same priority over an unrecorded instrument that a creditor could have acquired under section 496, Ky. St., by acquiring a hold or lien on the property covered by it through his own activity. It does not appear from the opinion whether there were any subsequent creditors without notice, and I do not recall what the fact was as to this. Of course, the opinion could only have been based on the fact that there were.

The decision in this case finds support in the decision in the appellate court of this circuit in the case of Potter Mfg. Co. v. Arthur, 220 F. 843, 136 C. C. A. 589, Ann. Cas. 1916A, 1268. In that case Judge Denison, on behalf of the court, said: "Under the rule in York v. Cassell, supra, this superior right did not pass to the trustee in bankruptcy, but he stood in the shoes of the bankrupt. This rule has been changed by the amendment of June 25, 1910, to section 47a (2), providing that as to property 'in custody' the trustee 'shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings'; and, of course, the nature and extent of these 'rights, remedies and powers' must be determined by the law of the state, where not inconsistent with the Bankruptcy Act. There is general agreement that the amendment of 1910 was made with the very purpose of changing the rule declared in York v. Cassell (Remington, vol. 3, §§ 1137 and 1212½; Loveland [4th Ed.] vol. 1, p. 767); and we think it clear that such was the effect and that the trustee stands in the place of each creditor, and may assert the rights which any creditor would have had against the property 'in custody,' if that creditor, at the date of filing the petition in bankruptcy, had been holding an execution levy. See Massachusetts Co. v. Kemper, 220 F. infra [847, 136 C. C. A. 593] (opinion filed to-day). It cannot be said that the in-

tent of the amendment was only to put the trustee in the position of a creditor who had, in fact, obtained a lien, because that was the law before the amendment. See section 67f [Comp. St. § 9651]; and In re Martin, supra [193 F. 841, 848, 113 C. C. A. 627]; Foerstner v. Citizens' Co., supra [186 F. 1, 108 C. C. A. 267]; and In re Rouse, 208 F. 881, 126 C. C. A. 90 [L. R. A. 1915B, 148]."

The statute came before me for the last time in the Watson Case. In that case the claims of subsequent creditors without notice exceeded the value of the property subject to the unrecorded instrument. But the instrument was lodged for record, and recorded before any such creditor had by his own activity acquired a hold or lien on the property, and before the institution of the bankruptcy proceedings. I gave priority to the instrument. The decision in Wicks v. McConnell as to the true construction of the statute, and the correctness of my decision in the Sewell Case based thereon, were vigorously combated, and I felt constrained to make a critical survey of all the prior decisions of the Kentucky Court of Appeals to see if it was not possible to settle for all time to come that the decisions in those cases were sound. I also dealt with the decisions of the Court of Appeals of Kentucky after that in Wicks v. McConnell, and undertook to show that they to no extent qualified that decision. My decision in this case was affirmed in Deupree v. Watson, 216 F. 483, 132 C. C. A. 543.

This case brings before me, for the first time, the amendment of 1916 to section 496 of Kentucky Statutes. The appellate court of this circuit and the Court of Appeals of Kentucky have had occasion recently to consider the effect thereof, and their decisions are in conflict. In re Duker Ave. Meat Market (C. C. A.) 2 F.(2d) 699; Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833.

The former decision was rendered December 8, 1924, and the latter January 30, 1925. The appellate court of this circuit, therefore, did not have the benefit of any decision of the Court of Appeals of Kentucky when it dealt with the matter, of which note was taken in its opinion. It seems to me that the decisions in both cases were wrong, and they are calculated to bring about a state of confusion in regard to the meaning of the statute as it now stands. Such a state would seem for some reason or other to have always hovered over this particular statute. What the situation calls for, therefore, is an attempt on the part of some

one to straighten things out. From what has already been said, and from a consideration of the opinions in those two cases, I am at least better equipped than any one else to make the attempt. Before doing so reference should be made to the decision of the Kentucky Court of Appeals in the case of Jewell v. Cecil, 177 Ky. 822, 198 S. W. 199, its latest deliverance on the statute as it existed before the amendment. It merely adhered to the conclusion reached in Wicks v. McConnell, and cited the decision of the Supreme Court in the case of Holt v. Crucible Steel Co. as accepting that conclusion. It, however, corrected a possible wrong inference from certain statements in the opinion in Wicks v. McConnell. That inference was that, in order for a subsequent creditor without notice to have a prior claim over the unrecorded instrument, it was essential that the creditor should have extended credit upon the faith of the debtor's having possession of the property, without notice thereof. It was held that all that was essential was that the creditor should be a subsequent creditor without notice. It was immaterial that he had not extended credit upon the faith of such fact. The court seems to have been of the opinion that, in order to have priority, the necessary hold or lien on the property should have been acquired by legal proceeding. But there is nothing in Wicks v. McConnell, or any previous decision of the court, which would deny priority where such hold or lien was acquired by the creditor through the voluntary act of the debtor. In the opinion rendered on behalf of the court by Judge Clarke it was said: "This court has frequently held that an unrecorded mortgage, or a 'pocket lien,' for purchase money such as was Jewell's, is superior to that of an attaching creditor. It was thus held that, notwithstanding the statute, courts of equity, as between parties holding equities against the property, would give precedence to the older equity." But it is to be noted that such holdings were before the decision in Wicks v. McConnell, when the words "or against creditors" had been practically eliminated from the statute, which had come about in the way I have pointed out.

[1] In determining the effect of the amendment of 1916 it must be viewed historically. By this is meant that one must consciously place himself in the situation existing at the time of its enactment and interpret it from that point of view. Judge Taft, in the case of Ex parte Grossman, 267 U. S. 87, 45 S. Ct. 332, 69 L. Ed. 527, recognized the historical method as the right approach to the interpretation of any document. He there said: "The language of the Constitution cannot be interpreted safely except by reference to the common law and to British institutions as they were when the instrument was framed and adopted."

The situation existing at the time of the enactment of the amendment was the statute as it then stood, and as it had been construed in Wicks v. McConnell, behind which were the previous attempts at its construction. One should be, as it were, saturated with that situation. To repeat, according to that construction, the statute had in view only subsequent creditors without notice who had by their own activity secured a hold or lien on the property covered by the instrument previous to its recordation. At any rate, it had in view only subsequent creditors without notice, and they could get in position to assert their rights only by acquiring such hold or lien. It did not have in view antecedent creditors or subsequent creditors with notice. According to its thought, only subsequent creditors without notice were entitled to consideration as against unrecorded instruments. Neither antecedent creditors nor subsequent creditors with notice were entitled thereto. In so far as the statute was thus construed, it had a sound basis in reason. The requirement that the favored creditor should have acquired such hold or lien did not add to the basis for consideration. It simply put him in position to be heard as to his right.

Viewing the amendment from this standpoint, what do we find? The amendment does not change the phraseology of the original statute in any particular. It merely adds a sentence thereto. The clause "against creditors" is left as before in association with the preceding clause "against a purchaser for a valuable consideration without notice," and is still colored by it just as before. The purchaser had in view by that clause is a subsequent purchaser, and one without notice. That they should be on a par, the creditors had in view by the latter clause should be subsequent creditors, and that without notice. Thus this situation was left exactly as it was before. Furthermore, at the time of the amendment, there was no possible ground for claiming that in sound reason antecedent creditors should have the precedence over the unrecorded instrument. There was less ground for claiming that a subsequent creditor with notice should have such precedence. If a purchaser for valuable consideration with notice should not have such precedence, why should a subse-

quent creditor with notice have it? The thought of the one clause was inconsistent with such an interpretation of the second clause. There was, however, ground for claiming that the requirement that the subsequent creditor without notice should have acquired by his own activity a hold or lien on the property before recordation in order to be in position to assert his right should be changed. There was no reason why he should not be able to assert his equity whenever he in any way got in position to do so, as, for instance, upon the death of the debtor, or upon his making a general assignment for the benefit of creditors, or, after the recordation of the instrument, by his own activity through legal proceedings or by the voluntary act of the debtor. Congress recognized this by the amendment of June 25, 1910, to section 47(a)2 of the Bankrupt Act by which the trustee in bankruptcy was enabled to assert this equity.

In Potter Mfg. Co. v. Arthur, Judge Denison said: "There is general agreement that the amendment of 1910 was made with the very purpose of changing the rule declared in York v. Cassell (Remington vol. 3, §§ 1137, 1212½; Loveland [4th Ed.] vol. 1, p. 767)."

So it may be that the very purpose of the amendment of 1916 to the Kentucky Statute was to change the rule in this particular, declared in Wicks v. McConnell, so far as the state courts are concerned. And, when one comes to consider the phraseology of that amendment, there can be no doubt that such was the very purpose thereof. What it purports to do is to define the word "creditors" in the original statute, and, whilst it provides that it shall include "all creditors," it does not stop there. Had it so done, there would be room to say that the statute had been enlarged to cover antecedent creditors and subsequent creditors with notice as well as subsequent creditors without notice. This phrase is followed by the qualifying clause "irrespective of whether or not they may have acquired a lien by legal or equitable proceedings or by voluntary conveyance." This shows that the purpose of the amendment was to make it so that, in order that a subsequent creditor without notice should be in a position to assert his equity, it should not be essential that he shall first have acquired a lien in such a way. He can assert it, if the debtor dies and his estate is in the course of administration, or it is in such course under a general assignment for the benefit of creditors, and that though such contingency happens after recordation

of the instrument, or if he acquires a lien in such a way after so acquiring it, though there has been prior recordation. Thereby the equity was strengthened and rendered of absolute value to the extent of the property subject to it. No other reason for this amendment than this can be assigned. In view of this, the word "all" in the amendment must be construed as not having reference to all creditors generally, but all creditors within the purview of the original statute, i. e., all subsequent creditors without notice. Had the original statute provided not "or against creditors," but "or against subsequent creditors without notice," there could be no possible question as to this. In that case it is not conceivable that, if the purpose of the amendment had been to enlarge the word "creditors" in the original statute, so as to make it include antecedent creditors and subsequent creditors with notice, as well as subsequent creditors without notice, the phraseology of the original statute would not have been changed so as to get rid of such limitation therein. But, according to the construction of the original statute in Wicks v. McConnell, followed in Jewell v. Cecil, that statute was exactly as if it had so provided in so many words.

I am therefore constrained to state my concurrence in Judge Moorman's decision in the Duker Ave. Meat Market Case (D. C.) 295 F. 913, and dissent from that of the appellate court. The opinion by Judge Mack concludes with this paragraph, to wit: "In the absence of a decision of the Court of Appeals of Kentucky, and with full recognition of the difficulty of determining the true meaning of the statute, we believe that it should be liberally construed as against what the Legislature deemed an evil, secret liens, and, therefore, to protect antecedent as well as subsequent creditors."

[2, 3] It is true that the Legislature deemed secret liens an evil, but there is not the slightest indication in the original statute or in any decision construing that statute, or in the amendment, that the Legislature deemed such liens an evil against antecedent creditors or as against all subsequent creditors. So far as all indications go, it deemed them an evil only against subsequent creditors without notice, just as they were an evil against subsequent purchasers for value without notice. Nor can I see any ground for claiming that they are an evil against antecedent creditors; certainly not against subsequent creditors with notice. But, notwithstanding such is my view of the matter on principle, I would feel constrained to follow

the decision of the appellate court if it were not for the later decision of the Court of Appeals of Kentucky in the case of Mason & Moody v. Scruggs, supra. This decision conflicts with that of the appellate court for this circuit. It is there said by Judge Dietzman, who delivered the opinion of the court as follows, to wit: "We have, in this case, presented to us squarely, for the first time since its passage, the effect to be given to this amendment to the statute. After a careful consideration of the matter, with special reference to the evils sought to be remedied and the evident purpose of the Legislature in passing this amendment, we have come to the conclusion that the expression 'all creditors' therein means subsequent creditors, whether they be secured or unsecured, and such antecedent creditors who at some time prior to the recording of the mortgage or deed of trust have secured some equity in the property."

The conflict between this decision and that in the appellate court of this circuit is in what is said in this quotation as to antecedent creditors. In the latter decision it was held that all antecedent creditors were within the purview of the statute as amended. In the former it is held that only antecedent creditors, "who at some time prior to the recording of the mortgage or deed of trust, have secured some equity in the property." This, if sound, required that Judge Moorman's decision be affirmed, because none of the antecedent creditors there, so far as appears, had secured any equity in the property. But it seems to me that the position of the Court of Appeals as to antecedent creditors is equally unsound. As I see it, there is no possible basis therefor in the amendment. Indeed, it is in the teeth thereof. It provides that the creditors to be protected shall be protected "irrespective of whether or not they may have acquired a lien" in either of the ways named. Yet it is held that antecedent creditors are to be protected if they have "secured some equity." Furthermore, according to the language used, subsequent creditors with notice are within the protection of the statute as amended as well as subsequent creditors without notice. No distinction is made between subsequent creditors as to whether they have notice or not. If this is sound, a subsequent creditor with notice is protected, whereas a subsequent purchaser for value with notice is not protected. No possible reason can be assigned for making any such distinction. The error, as I conceive it to be, would seem to be due to concentrating on the phrase "all creditors" in the amendment.

The concentration should have been on the word "creditors" in the original statute, and an understanding first have been had as to what that word meant as construed by the Court of Appeals of Kentucky in Wicks v. McConnell and Jewell v. Cecil. As soon as it is understood that it means subsequent creditors without notice, just as if those words had been used instead of the general word "creditors," all difficulty in construing the phrase "all creditors" in the amendment vanishes. The meaning is not all creditors generally but all subsequent creditors without notice, as would have been the case had the phrase used been "all such creditors." There are but two possible meanings of the phrase "all creditors" in the amendment; either all creditors generally, or all subsequent creditors without notice. The Court of Appeals has adopted neither meaning. It takes in antecedent creditors as well as subsequent creditors, and subsequent creditors with notice as well as without notice. But it does not take in all antecedent creditors. It leaves out such creditors who have not "secured some equity." There is no possible alternative to my view of the matter except that of the appellate court of this circuit, which is that "all creditors" in the amendment means all creditors generally, i. e., all subsequent creditors whether without or with notice, and all antecedent creditors whether or not they have "secured some equity." The distribution of the creditors covered by the phrase made by the Court of Appeals of Kentucky is not only without any support in the statute as amended, but, as stated, in so far as it takes in antecedent creditors who have "secured some equity," and leaves out those who have not, it is in the teeth of the amendment itself. I am therefore constrained to hold that the order of the referee was correct.

I feel that I am free to follow my view of the matter by reason of the fact that the Court of Appeals of Kentucky, since the decision by the appellate court of this circuit has held that the statute as amended does not protect all antecedent creditors. It does not protect those who have not "secured some equity," and such is the predicament of the antecedent creditors here. In so far I am justified in following the decision of the Court of Appeals of Kentucky rather than that of the appellate court of this circuit. And, as such is not the predicament of the antecedent creditors here, in upholding the order of the referee giving the holder of the unrecorded instrument the prior right,

I do not run counter to the decision of the Kentucky Court of Appeals.

[4] On the question as to the petition for review being filed in time I have this to say: The order complained of was entered December 5, 1924, and the petition for review was not filed until February 27, 1925. There is no rule in this district as to the time when petitions for review shall be filed. When the order was made, the decision of Judge Moorman in 295 F. 913, was the only authority on the question involved, and the referee in making the order followed this ruling. It was an excuse, at least for the trustee acquiescing in the order, and he filed his petition for review immediately upon his becoming aware of the decision of the appellate court reversing that of Judge Moorman. This exceptional state of case is sufficient to justify a holding that the petition for review was filed in time.

The order of the referee is affirmed.