### In re BEREA BAKING CO.

(District Court, E. D. Kentucky. October 12, 1925.)

Bankruptcy ⟳184(2)—General creditors without notice of prior unrecorded mortgage protected against it by Kentucky Statute, though it was later recorded before bankruptcy of mortgagor.

Ky. St. § 496, as amended by Laws 1916, c. 41, *held* to protect against mortgage general creditors of mortgagor, represented by trustee in bankruptcy of mortgagor, whose debts were created subsequent to execution of the mortgage, but without notice of it, though it was thereafter recorded before the bankruptcy proceedings.

In Bankruptcy. In the matter of the Berea Baking Company, bankrupt. On petition of A. F. Scruggs and another, mortgage creditors, for review of an order of the referee invalidating the mortgages as to the trustee. Order affirmed.

D. Andrew Shearard, of Berea, Ky., for bankrupt.

Burnam & Greenleaf, of Richmond, Ky., for creditors.

ANDREW M. J. COCHRAN, District Judge. This cause is before me on petition for review filed by A. F. Scruggs and S. R. Scale, creditors, whose debts are secured by two mortgages, complaining of an order of the referee invalidating the mortgages as to the trustee. The mortgages were executed in June and July, 1923, and were legally lodged for record November 19, 1924. They were given for a present consideration, and had not been fraudulently withheld from record. The debts of the general creditors, represented by the trustee, were created subsequent to the execution of the mortgages and without notice of their existence, but before they were legally lodged for record. This bankruptcy proceeding was instituted February 21, 1925. This petition for review brings before me for determination the ever-recurring question as to the true construction of section 496 of the Kentucky Statutes. Had that section been as it was before the amendment of 1916 (Laws 1916, c. 41), there could be no question but that the mortgages would have been valid as against the trustee. I so held in the case of In re Watson (D. C.) 201 F. 962.

This is made out in this way: The statute as it then stood, so far as it related to creditors, briefly put, provided that no mortgage shall be valid against creditors until it is legally lodged for record. Affirmatively put, the provision was that a mortgage shall be invalid against creditors until it is so lodged. The implication is that the mortgage is valid against creditors after such lodgment. But as to what creditors? It can only be as to those creditors whose debts are thereafter created. It cannot be as to creditors whose debts were theretofore created. For it to be so would be to take back with one hand what is given by the other. That such is the case is made plain by a consideration of the statute in so far as it relates to a purchaser for a valuable consideration without notice. As to him the provision is exactly the same. It is that no mortgage shall be valid against him until it is legally lodged for record, or, put affirmatively, a mortgage shall be invalid against him until it is so lodged. The implication is that it is valid against him after such lodgment. The purchaser meant is one who thereafter becomes such, and not one who theretofore so became. A mortgagee by legally lodging his mortgage for record certainly cannot prevail over such a purchaser who became such before such lodgment and after the execution of his mortgage without notice of its existence. So a mortgagee, by so doing, cannot prevail over a creditor who became such before such lodgment. The lodgment for record affects alike a purchaser and a creditor who becomes such after such lodgment, but not one of either class who theretofore became such. So far there was no difficulty in construing the statute. The difficulty arose in determining whether the mort-

gage is invalid as to all creditors whose debts were created before its legal lodgment for record. The Court of Appeals of Kentucky, in construing the statute, determined that it was not. It was not invalid as to any creditor whose debt was created before the execution of the mortgage. It was only invalid as to creditors whose debts were created subsequent thereto. Nor was it invalid as to all such creditors. It was only invalid as to creditors whose debts were created, not only subsequent thereto, but without notice of the existence of such mortgage. It was not invalid as to any such subsequent creditor whose debt was created with notice of the existence of the mortgage. Nor was it invalid as to all subsequent creditors without notice. It was only invalid as to such creditors who had acquired a hold on the property covered by the mortgage by their own activity.

This was settled for good by the decision in the case of Wicks v. McConnell, 102 Ky. 434, 43 S. W. 205. Such being the case, if the mortgage was legally lodged for record before the subsequent creditor without notice had acquired such hold, it would prevail over such creditor. This was so, not because of the implication of the statute that, after such lodgment, the mortgage was valid against creditors whose debts were created prior thereto, there was no such implication, but because such a creditor did not come within those creditors against whom the mortgage was invalidated. Such, then, is the way in which it is to be made out that, if this case had arisen before the amendment of 1916, the petitioner's mortgages would have to be held valid as against the trustee. The case then narrows itself down to the effect of the amendment. Its purpose was to enlarge the creditors whose debts were created before the legal lodgment of the mortgage for record as to whom it was invalidated. And the problem is to determine the extent of such enlargement. Three views have been advanced, one by the Appellate Court of this Circuit, one by the Court of Appeals of Kentucky, and a third by myself. The last presentation of my view is to be found in the Frost Case (D. C.) 9 F.(2d) 128. According to it, the enlargement was limited to taking in subsequent creditors without notice who had not acquired a hold on the mortgaged property by their own activities. It went no further.

The view of the appellate court of this circuit is presented in the case of In re Duker Meat Market, 2 F.(2d) 699. It there held

that the enlargement was such as to take in all creditors whose debts were created before the legal lodgment of the mortgage for record, i. e., creditors whose debts were created before the execution of the mortgage as well as whose debts were created subsequent thereto, and subsequent creditors with notice as well as those without notice. Ground for this position is to be found in the word "all" in the amendment. It fails, however, to give due consideration to the settled construction of the word "creditors" in the statute as it stood before the amendment and to the evident object of the amendment, which was to do away with the requirement that a subsequent creditor without notice had to acquire a hold on the property covered by the mortgage by his own activity in order that it should be invalidated as to his debt. The view of the Court of Appeals of Kentucky comes between the other two. It held in the case of Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833, that the enlargement made by the amendment did not take in all creditors whose debts were created before the mortgage was legally lodged for record. It did not take in all creditors whose debts were created before the execution of the mortgage. It took in only such creditors "who at some time prior to the recording of the mortgage * * * have secured some equity in the property." As to creditors whose debts were created subsequent to the execution of the mortgage, it said that it took them in "whether they be secured or unsecured." This sentence is broad enough to permit one to say that its position is that the amendment takes such creditors in whether they are with or without notice, though this is not expressed in so many words. The court thus stated its conclusion: "The expression 'all creditors' therein means subsequent creditors, whether they be secured or unsecured and such antecedent creditors who at some time prior to the recording of the mortgage or deed of trust have secured some equity in the property."

I have an idea that it is possible for one to differ with this conclusion and yet to admit that the case was rightly decided. The facts of the case were these: Allén owned a crop of tobacco. In July, 1921, he mortgaged it to Mason & Moody to secure them for supplies theretofore sold him by them on credit and for future advances. The mortgage was not legally lodged for record until October 28, 1921. After its execution, and before it was so lodged, i. e., in September, 1921, Allen delivered the crop

to Scruggs, to whom he was indebted, on condition that Scruggs should sell it, apply the proceeds so far as they would go to the liquidation of his indebtedness to Scruggs, and turn over the balance, if any, to him. I take it that the indebtedness of Allen to Scruggs was created before the execution of the mortgage to Mason & Moody. The transaction between Allen and Scruggs was a pledge of the crop of tobacco by Allen to Scruggs to secure this antecedent debt. Scruggs sold the tobacco in January, 1922, and a controversy arose between him and Mason & Moody as to which was entitled to priority in the proceeds of the sale. The court held that Scruggs was, and it based its holding on section 496 of the Kentucky Statutes. I have not investigated the matter, but it strikes me that it is possible that the decision was right without regard to that statute. If Scruggs had given Allen a mortgage on the tobacco, instead of pledging it, and Allen had at once lodged it for record, I have an idea that his mortgage would have been entitled to priority, notwithstanding it was given to secure an antecedent debt. Such a position would not be dependent on section 496. If so, why was not the pledge entitled thereto without regard thereto? The court did not hold that it was not. It said: "But it is urged that the pledge being given to secure an antecedent indebtedness, the appellee cannot hold it as against appellants' prior mortgage, although the same was unrecorded. See Schuster v. Jones, 58 S. W. 595, 22 Ky. Law Rep. 568."

After thus stating this position, the court, without determining its soundness, passed to its holding that the pledge was entitled to priority under section 496. Possibly its reference to the case of Schuster v. Jones (Ky.) 58 S. W. 595, where a pledge was denied priority over a previous unrecorded mortgage, should be taken as an indication that it thought the position sound. But, in that case, the property covered by the mortgage and pledge was stock in a corporation, a mortgage on which, as was held therein, was not a recordable instrument. In view of this, that case may not be authority against the position that a pledge to secure an antecedent debt is entitled to priority over an unrecorded mortgage, if it is a recordable instrument, as was the case in Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833. In presenting this phase of that case I have contented myself with stating possibilities, as the necessities of this case do not require that I do more.

If the decision depends for its correctness on section 496, it is subject to criticism, in that it overlooks the provision of the amendment that the creditors had in view are included, "irrespective of whether or not they have acquired a lien by legal or equitable proceedings or by voluntary conveyance."

But however this may be, the decision goes no further than holding that, under section 496, a creditor, whose debt is created prior to the execution of an unrecorded mortgage upon personalty, is entitled to priority over such mortgage, if the creditor obtains a pledge before the mortgage is legally lodged for record. It is square against the position that the mortgage is invalid against antecedent creditors generally. It is therefore headed in the right direction, according to my view of the amendment. That view, as stated, is that its effect was to enlarge the word "creditors" in the statute as it stood originally so as to include subsequent creditors without notice who had not acquired a hold on the mortgaged property by their own activities, and no further. It is true that the statement made by the court of its conclusion was broad enough to indicate that it was its position that the amendment enlarged that word so as to take in subsequent creditors with notice, whether they had so acquired such a hold or not. But the court's attention was not directed to this matter, and I hardly think that it will so hold when its attention is directed thereto.

In the consideration of this case I have reflected more upon the decision in the case of Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833, than I did in considering the Frost Case (D. C.) 9 F.(2d) 128, and it is, perhaps, subjected to fairer treatment here than there.

Whichever may be the correct view of the matter, it must be held that the trustee here is entitled to priority over the mortgagees. The contention that the mortgagees are entitled to priority is based solely, as I understand that contention, upon the idea that it is the implication of section 496 that, as soon as a mortgage is legally lodged for record, it becomes valid. That is true, but, as heretofore stated, not against creditors whose debts were created before such lodgment, as petitioner would have it, but only against creditors whose debts are created thereafter. In Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833, the mortgage had been recorded before the litigation arose as to who was entitled to priority, and that

fact was not regarded as entitling the mortgagees to priority. And it was said generally that subsequent creditors, whether secured or unsecured, were entitled to priority, without qualification that, if the mortgage is recorded before the litigation in regard to priority arises, the mortgagee is entitled to priority.

I have not considered decisions cited from other jurisdictions by the petitioners. This is so peculiarly a matter of Kentucky law that they cannot be helpful.

The order complained of is affirmed.